LION FIRE INSURANCE COMPANY, LIMITED, v. HEATH & BLACKWELL.

Decided April 16, 1902.

**1.—Fire Insurance—Appraisement—Waiver.**

Where a fire policy provided that proofs of loss should be made within sixty days, and that if the parties disagreed as to the amount of the loss it should be determined by appraisers and the loss should not be payable until sixty days after the receipt by the company of the proofs of loss accompanied by the award of the appraisers, if appraisement had been required, a demand for appraisement came too late where made more than sixty days after the loss, and after proofs thereof had been received and retained by the company for more than three weeks.

**2.—Same—Computing Loss—Harmless Error.**

Where the uncontradicted evidence showed the loss to be more than the face of the policy, errors in the charge, if any, as to how the value of the property should be estimated, were harmless.

**3.—Same—Parties—Nominal Partner.**

Where the property was insured in the name of a firm composed of two partners, an action for loss of the property was properly brought in the firm name, and there was no variance because the proof showed that the ownership of the property was in one of the partners and that the other was only a nominal partner.

Appeal from the County Court of Johnson. Tried below before Hon. W. D. McKay.

*Crane & Greer,* for appellant.

*Henry, Brown & Patton* and *Ramsey & Odell,* for appellees.

JAMES, CHIEF JUSTICE.—The fire consumed an undertaker's stock, consisting of undertaker's goods, hardware, etc., which was insured by three policies, one for $700 on the hardware, and two for $1000 each on the stock generally, one the policy in question, and the other a policy in the American Central Insurance Company of St. Louis. The verdict and judgment were for the full sum of the policy.

The first, fourth, sixth, and seventh assignments are grouped in appellant's brief. The propositions, briefly stated, are as follows: (1)

Where the policy sued on provides, in effect, that within sixty days after a loss by fire, unless the time is extended in writing, the assured will make a proof of loss, containing certain statements therein enumerated, that the amount of the loss shall be ascertained by the assured and the company, and if they fail to agree, by appraisers, and that in case of any disagreement as to the amount of the loss the same shall be determined by appraisers, and that the loss shall not be payable until sixty days after the receipt by the company of the proof of loss, accompanied by the award of the appraisers, if appraisement has been required, and there was a disagreement as to the amount of the loss, and appraisement was demanded by the company about twenty-five days after the proof of loss was received, and about thirty-five days before the loss was payable, the right to have an appraisement contracted for in the policy was not waived. (2) When the evidence does not show that the delay in demanding an appraisement has prejudiced or in anywise injured the opposite party in having a fair and equitable appraisement, and the demand therefor, if acceded to, would not have postponed the time for payment of the loss, such delay does not waive the right to have an appraisal. (3) Where any act is to be performed under a contract, and no time is specified therein for the performance, a reasonable time is always allowed; and what is a reasonable time under given facts and circumstances is a question for the jury.

The fire occurred on January 21, 1901. There were negotiations for settlement which came to nothing. The policy contained provisions that the liability should be ascertained and estimated according to the actual cash value with proper deductions for depreciation, however caused, not to exceed in any event what it would then cost the assured to repair or replace the same with material of like kind or quality, the ascertainment or estimate to be made by the assured and the company, or if they differ, then by appraisers, and the amount of the loss or damage having been ascertained the sum for which the company is liable shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of loss has been received by the company, in accordance with the terms of the policy.

Also: That within sixty days after the fire, unless such time is extended in writing by the company, the assured shall render a statement to the company signed and sworn to by the assured, stating his knowledge and belief as to the time and origin of the fire, etc., the interest of the assured and of all others in the property, the cash value of each item, and the amount of loss thereon, etc.

Also: "In the event of disagreement as to the amount of the loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the assured and this company each selecting one, and the two so chosen shall first select a competent disinterested umpire; the appraisers together shall then estimate the loss, stating separately sound value and damage, and failing to agree, shall submit their

differences to the umpire, and the award in writing of any two shall determine the amount of such loss."

Also: "This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act, or proceeding on its part relating to the appraisement, or any examination herein provided for, and the loss shall not become payable until sixty days .after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required, have been received by this company, including an award by appraisers when an appraisal has been required."

Also: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the assured with all of the foregoing requirements."

The fire, as already stated, occurred on the night of January 21, 1901. Plaintiff was required to file his proof of loss within sixty days from that time. This proof of loss was received by appellant aon February 27, 1901. No objection was made to it and no demand for appraisement was made until by letter of appellant dated March 22d, and which reached appellees on March 25th. The court in its charge took the position that if no demand was made by appellant within sixty days from the date of the fire for an appraisement, and the proofs of loss were retained by appellant without objecation for more than sixty days from such date, appellant was liable. The court's view was that the demand for appraisement, under the provision of the policy, must have come within the sixty days. The construction of the contract was for the court. The policy required the insured to make proofs of loss within sixty days from the loss. Another of the clauses above copied provides that the loss "shall not be payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by the company, including an award by appraisers when an appraisal has been required." Thus it appears that it was contemplated that the appraisal should be demanded within sixty days from the fire as the ultimate time, because it was to accompany the proof of loss which was required to be filed within that time. It would seem that the time previous to appellant's receiving the proof of loss, February 27, 1901, was spent in efforts to arive at an agreement as to the amount which appellant should pay. This was fully three weeks before the expiration of the sixty. days. But nothing was heard from appellant until by letter of March 22d, received by the insured March 25th, it denied the extent of the loss claimed, and demanded an appraisement. We are of opinion that the demand came too late and that the court's construction of the contract was correct, and further, that the requested charges being based on a different theory, were properly refused.

The second assignment complains of the court charging the jury, in substance, that in estimating the sum to which plaintiffs are entitled, it being shown that there was another policy issued by the American

Central Insurance Company of St. Louis, covering the same items as those covered by the policy sued on, that they would determine from all the evidence the actual cash value of the property covered by said policy, estimating the same according to the actual cash value at the time of the fire, with any deduction for depreciation, however caused, if the jury believed such deduction should be made, and that when they had by this means arrived at the actual value of said property at the time and place of the fire, they would then deduct one-fourth, as provided in the policy, and from the amount thus obtained, after deducting one-fourth, they would deduct one-half, and then for the plaintiffs the balance that may remain, provided said balance did not exceed the sum of $1000. Because (1) this charge of the court contradicts the preceding part of the charge, in which the jury is instructed to take no account of the value of the hardware and farming implements, and is thereby misleading, confusing, and calculated to mislead the jury. (2) Because it leaves to the jury to say whether they believe any deduction should be made for depreciation, and allows the jury to make such deduction or not, as they choose, without reference to whether the evidence showed there was a depreciation. (3) Because this charge allows the jury to consider, in estimating the value of the property destroyed, the value of the hardware as well as the other property, and yet allows defendant no credit for the amount already paid for the hardware by the company insuring the same.

The charge when read in its entirety did not admit of the jury taking into consideration the value of the hardware, and if they read and considered the charge, which we must presume, they could not reasonably have been misled into doing so. The further objection to the charge is that it left for the jury to say whether or not any deduction should be made for depreciation, and allowed them to make such deduction or not as they chose without reference to whether or not the evidence showed there was a depreciation. Whatever technical errors there might have been in this charge in the above respects, they would not suffice to reverse the judgment as the evidence stands.

There was no evidence of the value of the goods except that it amounted to $3437.94, including the hardware. This was the testimony of Heath, according to an inventory prepared by him a short time before the fire, which was the cost of the goods with the freight added. He testified "that the goods were worth exactly what we have them inventoried here for." This evidence is not contradicted. He stated further that $95.50 worth of the goods as inventoried had been sold between the time of making the inventory and the fire. The value of the hardware was shown to be $450. All this was uncontroverted. The only testimony there was that would tend to reduce the above valuation was evidence that appellant's agent in the efforts to settle insisted on a reduction for deterioration of the goods. There was really no evidence of any material deterioration, but if there was there was no evidence

of its extent except that appellant's representative claimed and figured first 10 per cent and then changed to 5 per cent for deterioration during the negotiations. This is scarcely sufficient to be considered as evidence of the extent of the depreciation, if any.

Therefore, taking the value as established by the evidence, $3437.94, and deduct therefrom $450, the value of the hardware, and $95.50 for goods sold off after the making of the inventory and before the fire, and even allow 5 per cent for deterioration, we have a balance of $2758.29. Deduct one-fourth and we have $2068.72. Divide this between the two policies, and the judgment for $1000, the amount of the policy, is warranted. No prejudicial error would in any event appear from the errors claimed to exist in this paragraph of the charge. The charge in so far as it authorized the jury to consider deterioration was therefore favorable to defendant.

The third assignment is not well taken. It is contended that when suit is brought by two persons claiming that they are entitled to recover, and the evidence shows that only one of them is entitled to recover, there is a fatal variance and neither can recover. Blackwell had no interest in the property. He was merely a nominal partner in the firm of Heath & Blackwell. He gave his services and got a salary. He had been in the business for a few years, and it was thought his name would be worth something to the business. The store belonged solely to Heath. The contract of insurance, however, was made with Heath & Blackwell. Under this state of facts it was proper to join them as plaintiffs. Bates on Part., sec. 1023. This being so, it was immaterial that it was developed on this trial that Blackwell's status was as above stated, and the variance, so called, would not affect the judgment.

We have considered the case upon the theory that this was not a valued policy. Some doubt on this subject exists in our minds, for the reason that the hardware was covered by the policy and it was probably not a total loss.

The judgment is affirmed.

*Affirmed.*