## MOODY *v.* CLEVELAND WOOLEN MILLS *et al.*

There was no abuse of discretion in granting an ad interim injunction and appointing a temporary receiver.

Argued June 11, 1909.—Decided January 13, 1910.

Injunction and receiver.   Before Judge Reid, of the city court of Atlanta.   Fulton superior court.   April 15, 1909.

*Anderson, Felder, Rountree & Wilson, Candlers, Thomson & Hirsch,* and *Howard Van Epps,* for plaintiff in error.

*John L. Hopkins & Sons, Slaton & Phillips, King & Spalding, J. H. Porter, Smith & Hastings, Shepard Bryan, Rosser & Brandon, Horton Brothers & Burress,* and *J. E. & L. F. McClelland,* contra.

The Cleveland Woolen Mills and certain other parties, alleging themselves to be creditors of J. T. Moody, filed a petition against him,.praying for an injunction and the appointment of a receiver. Briefly stated, the facts alleged were, that Moody, with his partner, Brewster, in the year 1898 and prior thereto conspired to defraud the plaintiffs and the mercantile world, by false and fraudulent statements with reference to their financial standing, and as a result of the fraudulent scheme merchandise was procured from the plaintiffs and others to the extent of $700,000.   When the scheme was ripe Brewster absconded; and the plaintiffs and other creditors filed a petition against Moody and Brewster, praying the appointment of a receiver to take charge of their assets procured under this fraudulent conspiracy, and to administer them under the direction of the court.   Moody filed his defense, and the issues made by the pleadings were heard by an auditor, who, in his report, adjudged that the plaintiffs were entitled to the relief prayed for, and in which the issues as to the general scheme to defraud, and the specific acts of particular fraud with reference to the plaintiffs and others, were duly adjudged in favor of the plaintiffs.   On exceptions to the auditor's report a verdict was returned, and on June 30, 1900, a decree was entered, adjudging that the defendants entered into a general scheme, having for its purpose the purchase of goods, and the obtaining of credits, with intent to defraud the parties with whom they might deal, and that they executed this scheme by purchasing goods and obtaining credits, with no intention to pay therefor, and with intent to defraud their creditors.   It was further decreed, that, as to the individual instances where parties

to the cause were found by the auditor to be entitled to rescind their sales, and to claim the goods identified, the auditor's report was adopted, both as to the finding of the general scheme to defraud, and the special fraud perpetrated on the particular parties; and that the various plaintiffs were entitled to recover of the defendant, by general judgment, the gross amounts which respectively were set opposite their names, which amounts or demands respectively were to be credited with any sums which any of said parties received from the receiver in this case under this decree, or from collateral securities which they may have held as security therefor. The amounts adjudged to the various creditors were set forth. Reference is made to the pleadings and proceedings in this cause. No executions or fi. fas. were issued upon this decree, and eight years have elapsed from its date. Each of the plaintiffs in the present case has filed a petition praying that their judgments may be revived in their respective favor; and scire facias has issued, returnable to the September term, 1908, of the court. The defendant Moody, in 1901, filed a voluntary petition in bankruptcy in the United States district court for the northern district of Georgia, and procured an order of discharge. The discharge in bankruptcy, it is contended, did not discharge the debts of petitioners, nor the debts of any other creditor whose claim had been adjudged to be founded in the fraudulent conduct of Moody and Brewster, as appears from the before-mentioned decree. Very recently Moody acquired large amounts of real estate, specifically described, taking the title thereto in his own name. It is alleged, that these various properties were, and are, subject to the payment of the plaintiffs' debts, and the payment of such other creditors as are similarly situated; that it is not the purpose of Moody to pay the judgments of plaintiffs, or any other judgments, but it is his intention to defeat, if possible, the payment of their debts, and to effectuate such intent he will transfer and conceal his property; that the petitioners can not have executions issued upon their judgments, as they are dormant; and that pending the revival of the dormant judgments Moody will convey and secrete his property, unless the court equitably intervenes to protect them. The petition was verified. Subsequently it was amended by alleging that the defendant Moody had on deposit in certain banks in Atlanta large sums of money, which are subject to the plaintiffs' debts, and the plaintiffs prayed an injunction to pre-

vent the defendant from altering or changing the existing status of his bank accounts, or drawing out any money which he had on deposit.

From time to time various creditors, who were parties to the original suit against Moody & Brewster, filed their various interventions, setting out their respective demands, and adopting the allegations of the original petition. Later on the petition was amended by alleging, that, as a result of the general scheme to defraud, which was decreed to exist in the case of Park Woolen Mills et al. *v.* Moody & Brewster, the defendant Moody received more than $150,000, which he successfully secreted from the creditors and from the receiver in that case; that this money was not disposed of, nor turned over to the trustee in bankruptcy; that the plaintiffs are informed that Moody is the owner of a large number of negotiable instruments now lodged with a certain bank; and that within the past few weeks Moody has received the sum of $80,000, which he has withdrawn from the bank and secreted to defeat the plaintiffs' debts; that the real estate or money does not represent moneys made or accumulated since June, 1900 (the date of the decree in the general creditors' bill against Moody & Brewster), nor since the discharge of Moody in bankruptcy, but that the property is either the property, or proceeds of property, which was in existence at the time of the litigation, and which has been held by Moody, or secreted and concealed from his creditors and held for his benefit, and that it is only recently that Moody has ventured to put the property so held in his own name.

At the appearance term (September, 1908) the defendant demurred to the petition, and filed his answer; and at the January term, 1909, the court overruled the demurrer, to which ruling the defendant excepted. On March 16, 1909, the plaintiffs further amended by alleging, that they had filed scire facias proceedings for the purpose of reviving their judgments, which had become dormant by reason of no executions having been issued thereon; that after hearing the defense made to the scire facias the court passed an order reviving the several judgments of the plaintiffs and directing fi. fas. to issue, and eighteen fi. fas., aggregating about $125,000, were issued; that the various parcels of land referred to in the petition do not exceed $80,000 in value, and are not sufficient to fully pay off and discharge the plaintiffs' judgments; that it is the

avowed purpose of the defendant to sue out a writ of error to the Supreme Court in each of the scire facias proceedings, and not give in each case a bond for the eventual condemnation-money, and if such writ of error should be sued out it could not be heard by the Supreme Court before some time in January, 1910; that in order for the executions to proceed it is necessary that each should be levied upon the several pieces of property; that the several parcels differ greatly in value; that, in addition to the cost of levying, each piece of property under each levy must be advertised, and the cost of advertisements would be great, and in several instances wholly disproportionate to the value of the property; that sheriff's sales are usually attended with considerable loss, and will be in this instance, for the reasons set forth; that the defendant is insolvent, and, if he should file a bill of exceptions in each of the scire facias cases and obtain a supersedeas by making the statutory oath, he is unable, by reason of his poverty, to make bond for the eventual condemnation-money; that such affidavits would result in staying the proceedings on the scire facias, and would leave the defendant in the possession of the property described, much of which is improved and producing an income, and the income thus produced would be collected by the defendant and appropriated to his own use, when in equity it is subject to the payment of petitioners' debts; that the defendant has threatened that, if he is unsuccessful in the scire facias proceedings, his wife will file a claim to all or part of the property; and that if this threat should be carried out, a multiplicity of suits would result. The prayers were, that defendant's wife be enjoined from asserting any claim against the property, that the receiver collect the rents, that the defendant be enjoined from interfering with the status or title of the property, that the respective priorities and rights of the various plaintiffs be determined in this litigation, and that the assets of the defendant be administered under the decree to be rendered. Upon the allowance of this amendment the defendant renewed his demurrer.

Upon the interlocutory hearing for the appointment of a receiver and for injunction, on April 3, 1909, the following evidence was introduced: Affidavit of A. F. Liebman, as to the market and rental value of the various pieces of real estate described in the petition; an affidavit of J. L. Harrison, one of the tax-assessors of the City of Atlanta, that the taxable value of this property as re-

turned by defendant is $53,700; a certificate of A. P. Stewart, tax-collector of Fulton county, Georgia, showing that the returns of Mrs. Moody for the year 1908 embraced an item of real estate, valued at $4,125, and certain items of personal property aggregating $1,300; the various judgments in the scire facias cases, granted by Fulton superior court on March 9, 1909, in favor of the plaintiffs respectively, each of which was in the following form: "After full argument, the demurrers· to the answer as amended are sustained, and the answer stricken. Let the judgment in favor of the plaintiff be revived, as of its proper rank and priority. Let execution issue and proceed." The aggregate of these judgments was $83,000 principal, with interest from June, 1900, making a total of about $125,000. It was conceded on the hearing that the total value of Moody's assets was not over $80,000; and that in each of the cases where revival of judgments upon scire-facias proceedings had been granted, he had filed a bill of exceptions, carrying each case to the Supreme Court of Georgia, and that in each case a supersedeas had been obtained upon his affidavit showing his inability, from poverty, to pay the costs or give security for the eventual condemnation-money, and that counsel had advised him that he had good cause for writ of error. The court appointed a receiver to take charge of the assets of the defendant, and enjoined the defendant from in any wise interfering with the receiver's possession of the properties, or from collecting the rents or income thereof. The present writ of error is taken to this judgment, which is alleged to be erroneous for the reasons, that the petition as amended should have been dismissed upon the grounds set forth in the demurrer; because the court abused its discretion in appointing a receiver and in granting an injunction; and because the court refused (although requested so to do) to require the plaintiffs, who are conceded to be non-residents, to give a bond conditioned to pay any damages which the defendant might sustain by reason of the appointment of the receiver and the granting of the injunction, in the event that it should thereafter be determined that this was improper.

EVANS, P. J. (after stating the facts). When the interlocutory hearing was had, the court had overruled the defendant's demurrer at a previous term of the court. The grounds of the demurrer were, that the petition was without equity; that no cause of action was

alleged; that the plaintiffs had no lien; they had an adequate common-law remedy; that there was a misjoinder of parties and causes of action; and that copies of the pleadings and decree in the Moody & Brewster suit were not attached. Though exceptions pendente lite were taken to this ruling, its correctness is not now under review; because a judgment on demurrer can not be reviewed on a fast bill of exceptions. Until the judgment on demurrer is reversed, it is conclusive on the parties as to all questions necessarily involved in the decision of the points raised on demurrer. *Georgia Northern Ry. Co.* v. *Hutchins,* 119 *Ga.* 504 (46 S. E. 659). It does not appear whether the judge ruled that the subsequent amendment was of such materiality as to open up the whole case again for demurrer. The grant of an interlocutory injunction is not a final judgment upon the whole law of the case. It is largely a matter of discretion, and the injunction continues pending the suit only as preservative of the existing status, and does not conclude the demurrant from subsequently urging his demurrer in term. *Crovatt* v. *Baker,* 130 *Ga.* 507 (61 S. E. 127). Upon exceptions taken to the grant of an interlocutory injunction, which mainly involves an exercise of discretion, where the court had previously overruled a demurrer, and adjudged that there was equity in the petition, and no ruling is made as to the effect of a subsequent amendment to the petition, inasmuch as this court can not go into the questions adjudicated on demurrer in the present case, we will not reverse the grant of an injunction and the appointment of receiver, unless there was an abuse of discretion. Did the judge abuse his discretion? The petition positively alleged that the plaintiffs and intervenors filed a petition against Moody & Brewster, alleging a general scheme to defraud them, and asked that the court take charge of the assets of the firm of Moody & Brewster by receivers and through them to administer the assets. They allege further, that, in compliance with this petition, receivers were appointed and the estate of Moody & Brewster was administered; that Moody was duly served, and particular reference as to the scope of the pleadings is made; that each of the petitioners in the present case intervened in that case, and by their respective interventions alleged a general scheme to defraud, and set out the fraudulent representations made to each petitioner, and the fact that petitioners believed the same to be true and acted upon the faith thereof, to their detriment and injury;

that each of the petitioners averred his right to rescind the alleged sale, by reason of the fraud perpetrated upon him, and sought the right to reclaim his respective goods, to the extent to which they could be identified; and for more particular statement reference was made to the records of that case on the files of Fulton superior court; and that the case was referred to an auditor, who filed his report in which it was adjudicated that the petitioners were entitled to the relief prayed for, and in which the general scheme to defraud and the particular acts of fraud charged with reference to petitioners and others were duly adjudged in favor of the plaintiffs. As to these important allegations, which lay at the foundation of the plaintiffs' right to extraordinary relief, the defendant filed an answer in which he said that for want of information he could neither admit nor deny them. The answer to these allegations was not direct. The defendant certainly knew whether he was a party to a litigation in which he was served with a copy of the pleadings, by virtue of which his assets were taken away and administered by a receiver. The scope of the pleadings is stated, in which his fraud is the gravamen of the complaint; and yet he says he has no information on the subject. The purpose of a preliminary injunction is to preserve the status, and the respective rights of the parties, until final adjudication, and such an injunction may be continued on the coming in of an answer which is evasive and indefinite as to the material allegations of the bill. *Swift* v. *Swift*, 13 *Ga.* 140. Considering the indefiniteness of the answer, in response to a very substantial ground of the plaintiffs' equity, and the evidence introduced, we do not think the judge abused his discretion in the appointment of a receiver and the grant of an interlocutory injunction. See Civil Code, § 5054; *Bigham* v. *Gorham*, 52 *Ga.* 329; *Horne* v. *Peacock*, 122 *Ga.* 45 (49 S. E. 722); *Raleigh & Gaston R. Co.* v. *Pullman Co.*, 122 *Ga.* 700 (50 S. E. 1008).

*Judgment affirmed. All the Justices concur.*