THE BOISE ASSOCIATION OF CREDIT MEN, LTD., a Corporation, Respondent, v. UNITED STATES FIRE INSURANCE COMPANY, a Corporation, and NATIONAL UNION FIRE INSURANCE COMPANY, OF PITTSBURG, PA., a Corporation, Appellants; Same Respondent v. SPRINGFIELD FIRE & MARINE INSURANCE COMPANY, OF SPRINGFIELD, MASS., a Corporation, NATIONAL UNION FIRE INSURANCE COMPANY, a Corporation, and the UNITED STATES FIRE INSURANCE COMPANY, a Corporation, Appellants; Same Respondent v. ROYAL INSURANCE COMPANY, LTD., a Corporation, NATIONAL UNION FIRE INSURANCE COMPANY, OF PITTSBURG, PA., a Corporation, and UNITED STATES FIRE INSURANCE COMPANY, a Corporation, Appellants; Same Respondent v. NATIONAL UNION FIRE INSURANCE COMPANY, a Corporation, and UNITED STATES FIRE INSURANCE COMPANY, a Corporation, Appellants; Same Respondent v. U N I T E D STATES FIRE INSURANCE COMPANY, a Corporation, Appellant; Same Respondent v. NATIONAL UNION FIRE INSURANCE COMPANY, OF PITTSBURG, PA., a Corporation, Appellant; Same Respondent v. INSURANCE COMPANY OF NORTH AMERICA, a Corporation, Appellant; Same Respondent v. PACIFIC STATES FIRE INSURANCE COMPANY,

a Corporation, and L. McFADDEN, Appellants; Same Respondent v. PACIFIC STATES FIRE INSURANCE COMPANY, a Corporation, Appellant; Same Respondent v. UNION ASSURANCE SOCIETY, LTD., a Corporation, Appellant; Same Respondent v. ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Corporation, Appellant; Same Respondent v. HART-FORD FIRE INSURANCE COMPANY, OF HART-FORD, CONN., a Corporation, Appellant; Same Respondent v. SPRINGFIELD FIRE AND MARINE INSURANCE COMPANY, OF SPRINGFIELD, MASS., a Corporation, Appellant; I. R. SMITH, Respondent, v. PACIFIC STATES FIRE INSURANCE COMPANY, Appellant; I. R. SMITH, Respondent, v. UNITED STATES FIRE INSURANCE COMPANY, Appellant.

[256 Pac. 523.]

APPEAL AND ERROR—ORDER DENYING CHANGE OF VENUE—REMITTITUR—WITNESSES — TESTIMONY AS TO VALUE AND EXPERIENCE — TRIAL—PROOF OF PREVIOUS FIRES—INSURANCE—MEASURE OF DAMAGES—INSTRUCTIONS—PROOFS OF LOSS—INSURABLE INTEREST—ESTOPPEL.

1. Order denying motion for change of venue was not reviewable on appeal from judgment on the merits, in view of C. S., sec. 7152, authorizing direct appeal from such order, and section 7170, specifying matters that may be considered on appeal from judgment.

2. Where manager of insured testified in attempt to explain certain discrepancies in proofs of loss made by him after destruction of insured property, refusal to permit cross-examination relative to destruction by previous fires of property belonging to witness or corporation managed by him for declared purpose of showing ·qualification to testify concerning values and experience in preparing proofs of loss *held* a proper exercise of discretion.

3. In action on insurance policies, offer to prove that principal stockholder and manager of insured had had different fires during preceding years, which consumed property in some instances heavily insured, *held* properly excluded, in absence of statement as to specific facts testimony would establish and nature of evidence by which they expected to establish principal facts, consistent with incendiary origin of previous fires, since it was

necessary, not only to prove previous fires, but also that they were of incendiary origin, and pursuant to comprehensive plan.

4. Offer of proof cannot be made in general terms, but must enable court to rule on specific testimony, and must embrace all facts showing admissibility of evidence, and not of conclusions.

5. Where briefs of both parties admit that jury, in authorizing recovery on insurance policies, did not allow credit for payment made by certain companies to mortgagee pursuant to loss payable clause, and amounts paid by each of companies is stated in their brief, proper deduction from judgment rendered against such companies may be made by *remittiturs* of supreme court.

6. Proper measure of damages for destruction of insured property is determinable by the sum necessary to indemnify insured.

7. Proper measure of damages for destruction of insured building is the cost of a new building of dimensions of the one destroyed, less amount destroyed building had deteriorated by use.

8. For purpose of determining proper measure of damages for destruction of insured store fixtures, household furniture and personal effects, property should be appraised according to actual worth of article to owner, for use in condition in which they were at time of destruction, excluding any fanciful or sentimental consideration.

9. In estimating insured's loss on stock of merchandise having a fair market value, the market value should ordinarily control.

10. Instruction, in action on insurance policies, to effect that actual cash value to which recovery was limited was what it would cost insured in cash to purchase or replace property of like kind or quality, though erroneous, was not prejudicial, in view of amounts awarded by jury showing that valuation must have been determined from another instruction authorizing them to consider all conditions and circumstances in determining such value.

11. While a false statement of quantity or value in proofs of loss must be knowingly and wilfully made, with fraudulent intent to avoid a policy, yet misstatement may be so gross as to furnish in itself basis for inference of wilfulness and knowledge of falsity.

12. Where, in action on insurance policies, considerable testimony was introduced bearing on knowledge and good faith of insured in making proofs of loss, jury could not, in determining whether proofs were wilfully or fraudulently made, consider only mistake or discrepancies in proofs, but must necessarily

find from all evidence that they were knowingly false in order to avoid policy.

13. Where insurance policy by express terms recognizes insured as agent for other members of household, recovery may be had on policy for loss of such property, notwithstanding he had no insurable interest therein.

14. By insuring property in name of insured, with knowledge that part of it belonged to other members of his household, insurers were estopped to deny insurable interest.

15. Insured, as agent for other members of household, was entitled to make proof of loss in his own name by virtue of contract to insure it in his own name.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. M. I. Church, Judge.

Action on insurance policies. Judgment for plaintiff. *Modified and Affirmed.*

A. E. Clark and George Donart, for Appellants.

The proper venue in an action against a fire insurance company is the county where the loss occurred, or the county where the policy-holder instituting such suit resides. A policy-holder is the person holding the policy at the time the loss occurred. (C. S., secs. 4967, 6664; *Boyer v. Northern*

Publisher's Note.

4. Sufficiency of offer of proof, see note in 12 **L. R. A.** 557. See, also, 26 **R. C. L.** 1032.

6. See 14 **R. C. L.** 1301.

7. See 14 **R. C. L.** 1305.

9. See 14 **R. C. L.** 1304.

See Appeal and Error, 4 **C. J.**, sec. 2582, p. 680, n. 53; sec. 3027, p. 1045, n. 50; sec. 3140, p. 1141, n. 86.

Criminal Law, 16 **C. J.**, sec. 1142, p. 592, n. 45; sec. 1145, p. 594, n. 76.

Fire Insurance, 26 **C. J.**, sec. 22, p. 36, n. 63; sec. 450, p. 351, n. 81, 84, p. 352, n. 96; sec. 451, p. 353, n. 2; sec. 471, p. 369, n. 81; sec. 493, p. 383, n. 8; sec. 757, p. 541, n. 94.

Fraud, 27 **C. J.**, sec. 204, p. 70, n. 37.

Trial, 38 **Cyc.**, p. 1334, n. 7, 8, 9, 13, 14.

Witnesses, 40 **Cyc.**, p. 2507, n. 13.

*Pacific Ry. Co.*, 8 Ida. 74, 66 Pac. 826, 70 L. R. A. 691; Bliss on Code Pleading, sec. 344, p. 49; 31 Cyc. 904; 22 Cyc. 1385; 6 Words and Phrases Judicially Defined (1st series), p. 5440, art. 3096A; *Kase v. Hartford Fire Ins. Co.*, 58 N. J. L. 34, 32 Atl. 1057; Phillips on Insurance, sec. 108; May on Insurance, sec. 386; *Cochburn v. Hawkeye Commercial Men's Assn.*, 163 Iowa, 28, 143 N. W. 1006.)

Evidence of other fires occurring under like circumstances is admissible to show a continuing or comprehensive plan or scheme to defraud insurance companies. (*Rafferty v. State,* 91 Tenn. 655, 16 S. W. 728; *State v. McClar,* 81 Or. 510, 160 Pac. 130; *Hinkle v. State,* 174 Ind. 276, 91 N. E. 1090; *State v. Briggs,* 74 Kan. 377, 10 Ann. Cas. 904, 86 Pac. 447, 7 L. R. A., N. S., 278; Underhill on Crim. Evidence, sec. 438; *People v. Marrin,* 205 N. Y. 275, 98 N. E. 474, 43 L. R. A., N. S., 754; *People v. Zucker,* 154 N. Y. 770, 49 N. E. 1102.)

The amount of plaintiff's loss or damage in an action on a fire insurance policy is limited to the actual cash value of the property destroyed by fire at the time and place of destruction, not what it would cost the insured in cash to purchase or replace property of like kind or quality. (*Mechanics' Ins. Co. v. Hoover Distilling Co.,* 182 Fed. 590, 105 C. C. A. 128, 31 L. R. A., N. S., 873; 26 C. J. 352; *Palatine Ins. Co. v. Commerce Trust Co.,* 73 Okl. 236, 175 Pac. 930; *Prussian Nat. Ins. Co. v. Lawrence,* 221 Fed. 931, 137 C. C. A. 501, L. R. A., N. S., 1915E, 489; *State Ins. Co. v. Taylor,* 14 Colo. 499, 20 Am. St. 281, 24 Pac. 333; *Commonwealth Ins. Co. v. Sennett, Barr & Co.,* 37 Pa. 205. 78 Am. Dec. 418; Wood on Insurance, sec. 446.)

It is a question of fact for the jury to determine whether or not a large mistake or discrepancy between the sworn statement by the assured as to its loss, and the amount of the loss as shown by the evidence, is sufficient evidence to establish fraud or false swearing. Such mistake or discrepancy, when large, may in itself constitute sufficient evidence to establish fraud or false swearing on the part of the assured. (*Fire Association v. Allesina,* 49 Or. 316,

89 Pac. 960; *Rovinsky v. Northern Assur. Co.*, 100 Me. 112, 60 Atl. 1025; *Sternfeld v. Park Fire Ins. Co.*, 50 Hun, 262, 2 N. Y. Supp. 766; *Wall v. Howard Ins. Co.*, 51 Me. 32; *Insurance Companies v. Weides*, 81 U. S. 375, 20 L. ed. 894; *Spring Garden Ins. Co. v. Amusement Syndicate Co.*, 178 Fed. 519, 102 C. C. A. 29; *Commercial Ins. Co. v. Friedlander*, 156 Ill. 595, 41 N. E. 183; *Miller v. Alliance Ins. Co.*, 7 Fed. 649; *Franklin Ins. Co. v. Culver*, 6 Ind. 137; *Riley v. Aetna Ins. Co.*, 80 W. Va. 236, 20 A. L. R. 1172, note, 92 S. E. 417.)

An insured under a fire insurance policy has no insurable interest in the property of his mother-in-law or sister-in-law residing in the same household with him. (32 C. J. 1109; *Tyree v. Virginia Fire & Marine Ins. Co.*, 55 W. Va. 63, 104 Am. St. 983, 46 S. E. 706, 66 L. R. A. 657; *Home Ins. Co. v. Mendenhall*, 164 Ill. 458, 45 N. E. 1078, 36 L. R. A. 374; *Chrissman v. State Ins. Co.*, 16 Or. 283, 18 Pac. 466; *Hardwick v. State Ins. Co.*, 20 Or. 547, 26 Pac. 840.)

L. L. Burtenshaw, Frank D. Ryan and J. P. Pope, for Respondents.

The order denying change of venue was made on December 30, 1922, and no appeal from this order was ever made, had or taken, and an order denying a change of place of trial is an appealable order and must be taken within sixty days. Notice of appeal from the judgment only was filed on July 23, 1923. (*Ringer v. Wilkin*, 32 Ida. 330, 183 Pac. 986; C. S., sec. 7152, subd. 2; *Spivey v. District Court*, 37 Ida. 774, 219 Pac. 203; *Kimzey v. Highland Livestock & Land Co.*, 37 Ida. 9, 214 Pac. 750; *Reberger v. Johansen*, 38 Ida. 618, 223 Pac. 1079.)

Appellants made no proof or offer of proof of other fires under circumstances similar to the fire in the case at bar, nor did they introduce evidence or offer any proof of other fires within such proximity to the time of the fire in question or establish that any such previous fires were incendiary, or that I. R. Smith occasioned or contributed

to the happening of any previous fire.· (*Kahn v. State,* 182 Ind. 1, 105 N. E. 385; *State v. Graham,* 121 N. C. 623, 28 S. E. 409; 1 Wigmore on Evidence, sec. 354; 16 C. J., par. 1145, p. 593; *People v. Shea,* 147 N. Y. 78, 41 N. E. 505; *People v. Grutz,* 212 N. Y. 72, 105 N. E. 843, L. R. A. 1915D, 229; 5 C. J., p. 571.)

Appellant's offer of proof of other fires is wholly lacking in many elements which would entitle evidence of other fires to be admitted, and the offer contains much incompetent matter. If part of the offer is incompetent and part competent, then the whole is inadmissible, as the court is not required to separate that which is admissible from that which is inadmissible. Also it was necessary for the offer to set forth facts connecting Smith with the other fires and that he was personally present when such fires occurred. (*Farleigh v. Kelley,* 28 Mont. 421, 72 Pac. 756, 63 L. R. A. 319; *Swafford v. Board of Education,* 127 Cal. 484, 59 Pac. 900; Jones on Evidence, 3d ed., p. 1414.)

The instructions given by the trial court fairly state the law as to the measure of damages and value, and the instructions when read as a whole could not be misinterpreted by the jury or mislead them. (Elliott on Contracts, sec. 4338; 26 C. J., p. 536, subject "Market or Actual Value"; *Chippewa Lumber Co. v. Phenix Ins. Co.,* 80 Mich. 116, 44 N. W. 1055; *Hegard v. California Ins. Co.,* 72 Cal. 535, 14 Pac. 180, 359; *Just v. Idaho Canal & Impr. Co.,* 16 Ida. 639, 133 Am. St. 140, 102 Pac. 381; *Portneuf-Marsh Valley Irr. Co. v. Portneuf Irr. Co.,* 19 Ida. 483, 114 Pac. 19; *Knauf v. Dover Lumber Co.,* 20 Ida. 773, 120 Pac. 157; *Breshears v. Callender,* 23 Ida. 348, 131 Pac. 15; *Quirk v. Sunderlin,* 23 Ida. 368, 130 Pac. 374; *Hoy v. Anderson,* 39 Ida. 430, 227 Pac. 1058; *Taylor v. Lytle,* 29 Ida. 546, 160 Pac. 942; *Lyons v. Lambrix,* 33 Ida. 99, 190 Pac. 356.)

Mere discrepancy, although large, between the sworn statement by the insured as to the loss and the amount of the loss as shown at the trial will not of itself constitute sufficient evidence to establish fraud or false swearing, and fraud is never presumed. An essential element of false

swearing is an intent to defraud. (*Carroll v. Hartford Fire Ins. Co.,* 28 Ida. 466, 154 Pac. 985; *Mississippi Fire Ins. Co. v. Dixon,* 133 Miss. 570, 98 So. 101; *Alliance Ins. Co. v. Enders,* 293 Fed. 485; *Connecticut Fire Ins. Co. v. Union Mercantile Co.,* 161 Ky. 718, 171 S. W. 407; Joyce on Insurance, par. 3766; *Rasmusson v. North Coast Fire Ins. Co.,* 83 Wash. 569, 145 Pac. 610, L. R. A. 1915C, 1179; 26 C. J. 529, 541; *Republic Fire Ins. Co. v. Weides,* 14 Wall. (U. S.) 375, 20 L. ed. 894; *Ward v. Queen City Fire Ins. Co.,* 69 Or. 347, 138 Pac. 1067; *Wiseman v. American Ins. Co.,* 184 Wis. 523, 199 N. W. 55; *Kahn v. Traders Ins. Co.,* 4 Wyo. 419, 62 Am. St. 47, 34 Pac. 1059; note to 32 L. R. A., N. S., 458; 14 R. C. L., p. 1343, par. 515; *Insurance Co. of North America v. Wicker,* 93 Tex. 390, 55 S. W. 740.)

Whether there was false swearing on the part of the insured was conclusively sealed by the verdict of the jury. (*Ward v. Queen City Fire Ins. Co.,* 69 Or. 347, 138 Pac. 1067.)

Under the provisions of the policy respondent was entitled to recover the value of not only his own household effects but that of his wife, sister-in-law and mother-in-law, all being members of his household. (*Hooper v. Robinson,* 98 U. S. 528, 25 L. ed. 219; *Trade Ins. Co. v. Barracliff,* 45 N. J. L. 543, 46 Am. Rep. 792; 14 R. C. L., p. 917, par. 94; Joyce on Insurance, pars. 1048 and 1048B; 5 Joyce on Insurance, p. 5692; *Lenagh v. Commercial Union Ins. Co.,* 77 Neb. 649, 110 N. W. 740; *Alliance Ins. Co. v. Enders,* 293 Fed. 485.)

BRINCK, Commissioner.—Fifteen actions were consolidated for the purpose of trial, having been brought for the purpose of collecting upon insurance policies covering property destroyed by a fire at Midvale, Idaho, in Washington county, on November 27, 1921. The property insured consisted of a building, occupied as a store and hotel, together with merchandise and fixtures in the store, all owned by Sweaney & Smith Company, a corporation; and household furniture and personal effects of one I. R. Smith, who

resided in the hotel, and who was the principal stockholder and manager of Sweaney & Smith Company. Prior to the suits, all of the policies of insurance held by the Sweaney & Smith Company were assigned to the Boise Association of Credit Men, Ltd., a corporation, which brought thirteen actions based on such policies. I. R. Smith commenced the remaining two actions upon policies covering the household furniture and personal effects. Judgment was for the plaintiff in each case, and these appeals are from the judgments.

The complete record was by stipulation furnished this court in but three of the cases, and we accept as true the uncontradicted statements contained in the briefs as to facts not appearing in the record.

From such statements it appears that the store building was insured in the aggregate amount of $30,000, and was apparently a total loss; the merchandise was insured in the aggregate amount of $23,000; the store furniture and fixtures were insured in the amount of $2,700, and Mr. Smith's household furniture and personal effects were insured for $3,500. The actions apparently sought recovery for the full amount of the insurance on the building, the store furniture and fixtures and the household effects; and $19,496.80 upon the merchandise. It is said in appellants' brief that the jury awarded $22,500 as the loss upon the building, $14,000 as the loss upon the merchandise, and $2,500 on the household furniture and personal effects.

In the answers filed in the suits and appearing in the record, the defendants alleged as affirmative defenses, misrepresentations as to the value of the property in procuring the insurance, and misrepresentations in making proofs of loss, and further that the fire was caused by the intentional acts of the insured; and the testimony introduced by the defendants upon the trial was principally directed to these affirmative defenses.

The assignments of error do not attack the sufficiency of the evidence, but are based upon alleged errors of law.

44 Idaho—17

[1] The first assignment of error discussed in the brief rests upon the denial of a motion and demand for change of place of trial from Ada county to Washington county, in each of the actions. The merits of this question cannot be considered upon appeal from the judgment. By C. S., sec. 7152, a direct appeal is allowed from an order refusing to grant a change of place of trial; and C. S., sec. 7170, specifying the matters that may be considered upon an appeal from a judgment, provides that upon such an appeal the court may review any intermediate order or decision, if excepted to, which involves the merits, or necessarily affects the judgment, except a decision or order from which an appeal might have been taken; and this court has held, in *Ringer v. Wilkin,* 32 Ida. 330, 183 Pac. 986, that an order ruling upon a motion for change of venue is not reviewable upon appeal from the judgment.

[2] The assignments next discussed relate to the exclusion of evidence concerning the destruction by previous fires of property belonging to Mr. Smith, or corporations managed by him. Mr. Smith testified concerning certain discrepancies in the proofs of loss which he had made, and undertook to explain them. Defendants' counsel, for the declared purpose of showing Smith's experience and qualification to testify concerning values, and his experience in preparing proofs of loss, sought to inquire on cross-examination as to his experience in appraising merchandise, and in making proofs of loss, at the time of previous losses by fire; and objections as to the relevancy and materiality of the questions, and that they were not proper cross-examination, were sustained. Obviously, whether one who had been engaged in the mercantile business for twenty-five years, as the witness had been, on four particular occasions, had opportunity to appraise goods, would throw but little if any additional light upon his qualification to judge of the value of such goods as he had been dealing in all those years; and likewise, previous experience in making proofs of loss would not materially tend to show whether a mathematical error in computing valuations in the present proofs was in-

tentional. The trial of this case lasted many days, the testimony was voluminous, and the refusal to permit the question to be asked upon cross-examination, for the purpose asserted by counsel, was a proper exercise of the court's discretion.

[3]   Later on in the trial the defendants made a so-called offer of proof as to the previous fires, to which offer the objection of plaintiffs that it was immaterial and irrelevant and that no foundation had been laid therefor was sustained; and this ruling is assigned as error. The offer was in terms to prove that Smith personally, or as manager of corporations controlled by him, had had four different fires during the period of time from 1904 to 1918, which consumed property in some instances heavily insured; that at the time of each of the fires the community in which it occurred was suffering from depression and business conditions were bad; that Smith did not re-engage in business in any of the communities in which the fires occurred; and that one of the properties so destroyed had not been profitably operated for many years, and "That said several fires, including the fire involved in the cases now on trial, were the result of a comprehensive plan and design on the part of said I. R. Smith to establish a business in the community and operate it until a period of depression came on, effecting large insurance, and cause destruction of the properties by fire, in order that the insurance thereon might be collected; and that the fire involved in the cases now on trial was caused and produced in execution of said plan and design."

[4]   Analyzing this offer, it is seen to embrace three propositions: First, that the plaintiff Smith had had previous fires; second, that at the time they occurred he had a motive for causing the fires, the motive being the same in all instances; third, embraced within the portion quoted, that he caused the fires in pursuance of a comprehensive plan; and proof of all these propositions was necessary under any theory, to warrant the admission of the evidence offered. The establishment of the second proposition alone, namely, that Smith had in each case a motive for causing the fires, was of

course insufficient to show that he did cause them. (*State v. Elwell*, 105 Or. 282, 209 Pac. 616.) To apply the rule which is followed in criminal cases where other offenses are sought to be established as evidentiary of the guilt of the defendant of the offense for which he is on trial, it is essential to the admissibility of such evidence that proof of the other offenses must be plain, clear and conclusive, and evidence of a vague and uncertain character regarding them is not admissible. (*Paris v. United States*, 260 Fed. 529; *Baxter v. State*, 91 Ohio St. 167, 110 N. E. 456; 16 C. J. 592.) Before the proof of other fires is admissible in a prosecution for arson, it must be established that the previous fires were incendiary. (*Kahn v. State*, 182 Ind. 1, 105 N. E. 385; *People v. Fitzgerald*, 156 N. Y. 253, 50 N. E. 846.) Without holding that the incendiary character of previous fires need be established in a civil action with the conclusiveness that is required by at least some of the decisions in criminal cases, it seems apparent that in this case, in order to admit evidence of previous fires, it must be established by more than a mere suspicion that they were incendiary. (See *Colonial Mutual Fire Ins. Co. v. Ellinger*, 112 Ill. App. 302; *Queen Fire Ins. Co. v. Van Giesen*, 133 Ga. 741, 72 S. E. 41.) For all that appears in the offer, aside from the portion hereinabove quoted, the previous fires might have resulted from known and well-established natural or accidental causes, or under circumstances showing that Smith could not have been the responsible cause. It was therefore necessary to include in the offer evidence of facts other than those merely establishing motive, showing or tending to show that Smith caused them; and the effectiveness of the offer therefore depends upon the effect to be given the portion quoted, purporting to show that they were caused by Smith. This portion of the offer seems to be an argumentative conclusion from the preceding portion of the offer. No evidentiary facts tending to show that the other fires were of mysterious or unexplained origin, or could have been incendiary, or that Smith caused or could have caused the fires, were offered. Had the offer been admitted, de-

fendants could have complied with it by merely presenting evidence that the other fires occurred, and that Smith had a motive for causing them, and without further showing could have argued as they did in the quoted portion of the offer, that Smith caused all the fires. In order to make a valid offer, counsel should have stated the specific facts which the testimony would establish, and the nature of the evidence by which he expected to establish physical facts which would at least be consistent with an incendiary origin of the previous fires and with Smith having been connected with causing them. An offer cannot be made in general terms, but must be so made as to give the court an opportunity to rule on the specific testimony, and must embrace all the facts showing admissibility of the evidence, and must be of facts, and not of conclusions. (38 Cyc. 1334.) The offer was properly excluded.

[5] The third matter urged by appellants grows out of the fact that two of the companies carrying insurance on the building, being the United States Fire Insurance Company and the National Union Fire Insurance Company, had paid certain mortgages existing against the property, the policies carrying a clause making the loss payable to such mortgagees as their interest might appear, and the defenses urged against the policies not having been available as against the mortgagees. Upon payment of the mortgages, the paying companies took assignments thereof. Plaintiff, considering that in the actions brought against each of these companies respectively, the other company, by virtue of the assignment of mortgage, had an interest in the subject matter of the action, made both of the companies parties defendant under each of the policies, and alleged the facts concerning the payment to the mortgagees. In the answers filed in these two actions, the defendants admitted these allegations. The total amount paid by the two companies was $9,221.85. Nowhere in the record, either in the pleadings or in the evidence, does it appear in what proportion this payment was made by the two companies. Instead of requiring evidence on this point to be produced, the court

instructed the jury, after referring to the payment of the mortgages, and the assignment thereof: "You are instructed that in event you find for the plaintiff in the actions for the recovery of the loss sustained on the building, that you will not consider any question relating to said mortgages by assignment." The giving of this instruction is urged as error, appellants contending that it authorized the jury to ignore the payment which had been made. Just what was meant by this instruction is not apparent; but the effect of it, in the absence of any other instruction on the subject, is probably as appellants contend. Payment being an affirmative defense, and appellants having furnished no evidence which would enlighten the court or jury on the particular amount to be credited upon each of the policies in question, they are not in the best position to complain of the error; but that the jury did not allow credit for the payment made is admitted in the briefs of both parties, and counsel for appellants, representing as they do both of the insurance companies, have stated in their brief the amount paid by each of the companies on account of the mortgage, so that no undue violence will be done to orderly procedure by making the proper deductions from the judgments against each of these companies by the *remittiturs* of this court.

The fourth contention is as to alleged error in instructing the jury as to the amount of loss. The defendant requested the following instruction:

"If in consideration of the case before you, it becomes necessary for you to determine the amount of loss or damage sustained, you are instructed that the amount of such loss or damage to be found by you is limited to the actual cash value of the property destroyed by fire at the time and place of destruction, that is, at Midvale, Idaho, on November 27, 1921."

The court gave this instruction, but added the following sentence:

"And the actual cash value of property at time of fire means what it would cost the insured in cash to purchase or replace property of like kind and quality."

The policies provided that the insurance company should not be liable beyond the actual cash value of the property at the time of loss, and that the loss should be ascertained according to such actual cash value with proper deduction for depreciation, "and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality."

[6–9] Error is assigned in that the instruction as requested was refused, and that the instruction as given was erroneous by virtue of the sentence added, counsel urging that under the terms of the policy, the actual cash value was to be allowed in case of loss, and that cash value means fair market value. As to the building, it is contended that its fair market value depends upon business conditions in the community, the relation between the size of the building and the needs of the community, and similar considerations; and it is pointed out that the stock of merchandise had been on hand a considerable length of time, and was probably shelf-worn and out-of-date, that the store fixtures and furniture had been in use for considerable length of time, and that the household furniture and wearing apparel were no doubt in various stages of wear and depreciation. Neither the measure of damages stated in the instruction nor the market value, as urged by appellants (except perhaps as to the stock of merchandise), furnish the correct measure of defendants' liability, which is determined by the sum necessary to indemnify the insured. The actual cash value of the property at the time of loss is not ordinarily the same as the cost of replacing the property with new property of like kind or quality. As to a building, it is the cost of a new building of the same material and dimensions of the one destroyed, less the amount the destroyed building had deteriorated by use. (4 Cooley, Briefs on Insurance, p. 3082.) On the other hand, "The market value of a building cannot be used as the test in determining the amount of recovery for the destruction of a building for various reasons. If there was no market value for the property, so it could not be sold, it would not have any value, and consequently there would

be no loss . . . . Again, the market value of some buildings (as for instance tenement houses) may be much greater than their actual cash value. Besides, the market value would render it almost, if not quite impossible, in many cases to determine the amount of the loss. A building and the land on which it is built may have a joint market value entirely different from what the aggregate might amount to if they were to be considered separately and detached from each other.'' (4 Cooley, Briefs on Insurance, p. 3081; and see *Wall v. Platt,* 169 Mass. 398, 48 N. E. 270; 3 Sutherland on Damages, 4th ed., pp. 3042, 3043.)

Similar considerations apply in the case of the store fixtures, household furniture and personal effects. Such things ordinarily have no well-recognized market value, except as second-hand articles, and the value of such property to the owner is not ordinarily the price that would be paid by a second-hand dealer; while at the same time the difference in value between such property in its used condition and similar property entirely new must be recognized. The difference between the price of such property when new, and the price at which it could be sold as second-hand property being much greater than any difference in value occasioned by the use to which the articles had been put, or the condition in which they were at the time of the fire, such property should be appraised according to the actual worth of the articles to the owner, for use in the condition in which they were at the time of the fire, excluding any fanciful or sentimental consideration. (*Wall v. Platt, supra; Sun Fire Office v. Ayerst,* 37 Neb. 184, 55 N. W. 635.) As to a stock of merchandise, having a market value, the market value should ordinarily control in estimating the insured's loss. (4 Cooley, Briefs on Insurance, p. 3080.) As bearing upon the rules above stated, see *McCready v. Hartford Fire Ins. Co.,* 61 App. Div. 583, 70 N. Y. Supp. 778; *Virginia Fire & Marine Ins. Co. v. Cannon,* 18 Tex. Civ. App. 588, 45 S. W. 945; *Washington Mills Emery Mfg. Co. v. Commercial Fire Ins. Co.,* 13 Fed. 646; *Hilton v. Phoenix Assur.*

*Co.*, 92 Me. 272, 42 Atl. 412; *Stenzel v. Pennsylvania Fire Ins. Co.*, 110 La. 1019, 98 Am. St. 481, 35 So. 271.

[10] The definition of actual cash value contained in the instruction given was erroneous; whether the error was prejudicial is another question. Under the evidence introduced as to the value of the building, and in view of the verdict, it is clear that no prejudice resulted, in so far as the value of the building is concerned. The evidence was that the building cost $22,500 in 1914 and that the cost of materials and labor had practically doubled between that time and the time of the fire; no witness who testified as to the cost of reconstructing the building placed the cost of reconstruction at less than about $40,000, and no witness who testified as to depreciation of the building placed the possible depreciation at more than five per cent per year. The lowest valuation that could have been arrived at under the evidence, taking into consideration the cost of reconstruction, and the depreciation of the old building, was thus in the neighborhood of $26,000; and according to the appellants' brief, the jury fixed the value of the building at $22,500.

As to the merchandise, the plaintiff Smith's estimate of value was based on invoice price, plus transportation to Midvale; and the same basis of valuation was adopted by the defendants as to property which their evidence tended to show had been removed from the building before the fire. There was no evidence of depreciation in the merchandise, and no dispute as to the basis of valuation, the only conflict in the testimony being as to the quantity of goods on hand at the time of the fire. The plaintiff Smith testified that the value of the merchandise lost was some $18,000, and the jury awarded about $14,000 on this item. There was no evidence as to the replacement value of the goods other than plaintiff Smith's own testimony of its value at the time of the fire, being the value which he based on invoice price. Under this state of the record, it seems clear that the jury must have awarded what they considered from the evidence to be the market value of the goods on hand at the time of the fire, and that defendants were not prejudiced as to this

item by the instruction given.   Somewhat in point is *Lion Fire Ins. Co. v. Heath,* 29 Tex. Civ. App. 203, 68 S. W. 305.

As to the store furniture and fixtures, plaintiff Smith testified that they cost $4,500 and were worth upward of $5,000 at the time of the fire.   What the jury allowed on this item does not appear from the record, but the total insurance was only $2,700.   There was no evidence of what it would have cost to replace the fixtures, and it cannot be considered that the instruction complained of injuriously affected the defendants as to this item.

Plaintiff Smith testified that the household goods and effects were of the value of $5,480.13, based upon their cost. There is no evidence as to their condition, or the amount of their depreciation, and defendant permitted the witness to give this estimate of the value without objection, and without contradiction.   The jury allowed $2,500 of the $3,500 total insurance.   It is apparent the jury did not consider the cost of replacing these goods as the basis for their valuation, but rather followed another instruction which told them to determine the actual cash value from a consideration of all the conditions and circumstances appearing by the evidence.   Notwithstanding the errors in the instruction, it is clear that no reversal should be granted on this ground.

The next assignment argued is of alleged error in instructing the jury as follows:

"You are instructed that mere mistake or discrepancy although large, between the sworn statement by the insured as to its or his loss, and the amount of the loss as shown by the evidence, will not of itself constitute sufficient evidence to establish fraud or false swearing, and if you find from the evidence that any such discrepancies exist, you must further find that they were false and known by the insured to be false."

[11, 12]   The policies contained the usual provision that they would be void in case of any fraud or false swearing by the insured touching any matter relating to the insurance or the subject thereof, whether before or after loss.   Appellants,

while admitting that overvaluation in proofs of loss must be knowingly made in order to avoid the policy, contend that from the fact of overvaluation standing alone, the jury may infer knowledge of the falsity and fraudulent intent, and that it was error to inform them otherwise. As an abstract proposition, the instruction may have been, in this respect, incorrect. While a false statement of quantity or value in the proofs of loss must be knowingly and wilfully made, and with fraudulent intent, in order to avoid the policy (*Carroll v. Hartford Fire Ins. Co.*, 28 Ida. 466, 480, 154 Pac. 985; *Alliance Co. v. Enders*, 293 Fed. 485), yet there may be cases where the misstatement is so gross as to furnish in itself the basis for the inference of wilfulness and knowledge of falsity. Notwithstanding the language to the contrary in 26 C. J. 541, from which the first part of the instruction here is apparently taken (and which is not precisely supported by the cases cited in the note upon which the text is based), and notwithstanding the general rule as to fraud, that scienter cannot be inferred from the mere fact that a representation is false (27 C. J. 70), there are authorities holding that the statement may be so grossly false as to warrant the inference of knowledge of its falsity on the part of the person making it. (*Wall v. Howard Ins. Co.*, 51 Me. 32; *Sternfeld v. Park Fire Ins. Co.* (Hun), 2 N. Y. Supp. 766; 5 Joyce Insurance, sec. 3341.) It will seldom happen, however, that a case is rested upon the mere fact of falsity in the statement; usually the circumstances under which it was made, the opportunity of the person making it to know the truth, and other facts bearing upon the scienter, appear from the evidence, as is the case in most of the decisions cited by appellants. And in this case a considerable portion of the voluminous transcript consists of testimony bearing, *pro* and *con,* upon the knowledge and good faith of Smith in making his proofs. Under this state of the record it would have been improper for the jury to consider only the mistakes or discrepancies in determining whether they were wilfully or fraudulently made; and they must have understood the instruction in the sense obviously

intended by the court, and by the author of the article in
26 C. J. 541, above referred to, as merely requiring that in
addition to finding the statements false, they must find
from all the evidence that they were known to be false, in
order to avoid the policy.

[13–15] Appellants finally urge as to the actions brought
by I. R. Smith that inasmuch as a considerable portion of the
household furniture and personal effects covered by his poli-
cies, and claimed in his proofs of loss, was the property either
of his wife, her mother or sister, all of whom lived with him
as a part of his household, he had no insurable interest in
the property of his relatives, and could recover only for the
loss of his own property, and further, that his proofs of
loss were in this respect fraudulent, so as to defeat any
recovery on the policies. The points are raised by assign-
ments of error as to instructions touching the matter. The
policies in question describe as the property of the insured,
household furniture and personal effects, jewelry, etc., "all
being the property of insured or any member of insured's
household." By their express terms the policies thus rec-
ognized Smith as the agent for the other members of his
household for effecting insurance upon their property; and
any recovery had by him upon the policies for the loss of
such property would be held by him as agent for the owners.
The question of insurable interest does not arise in the
case, because he was admittedly not obtaining all of the
insurance in his own right. In fact, by insuring the prop-
erty in the name of Smith, with knowledge that part of it
belonged to other members of his household, the defendants
are estopped to deny his insurable interest. (26 C. J. 36.)
Nor does the question of fraud in the proofs of loss arise,
because Smith as agent was entitled to make proof of loss
in his own name, by virtue of the contract which permitted
him to insure it in his own name.

It sufficiently appears that none of the errors assigned,
in so far as error existed, could have affected the result,
except in the matter of allowing credits to the insurance
companies for the amounts paid to the mortgagees. In the

case of the *Boise Association of Credit Men, Ltd., v. United States Fire Ins. Co.* and *National Union Fire Ins. Co.*, the judgment should be modified by deducting from the amount thereof the sum of $7,545.15; and in the case brought by the same plaintiff against National Union Fire Ins. Co. and United States Fire Ins. Co. the judgment should be modified by deducting from the amount thereof the sum of $1,676.70; and, as so modified, they should be affirmed. Otherwise, all the judgments appealed from should be affirmed.

Johnson and Adair, CC., concur.

The foregoing is approved as the opinion of the court. Judgment in the case of the *Boise Association of Credit Men, Ltd., v. United States Fire Ins. Co.* and *National Union Fire Ins. Co.* is modified by deducting from the amount thereof the sum of $7,545.15, and, as modified, is affirmed. The judgment in the case of the same plaintiff *v. National Union Fire Ins. Co.* and *United States Fire Ins. Co.* is modified by deducting from the amount thereof the sum of $1,676.70, and, as modified, is affirmed. The remaining judgments are affirmed.

Costs to respondents.

Wm. E. Lee, C. J., and Givens, Taylor and T. Bailey Lee, JJ., concur.