COMMONWEALTH vs. WILLIAM A. RUFFEN.

Essex.  October 16, 1985. — November 13, 1985.

Present: SMITH, CUTTER, & WARNER, JJ.

*Evidence*, Self-serving statement, Verbal completeness, Relevancy and materiality, Sexual conduct.

In the circumstances, no ground for reversal of criminal convictions for sexual offenses was presented by a trial judge's refusal to admit evidence that, after the ten year old victim had spoken to police in the defendant's presence, the defendant had denied the truth of her story. [93-94]

A defendant charged with sexual offenses made no showing of bias, or incentive to fabricate, or other ground that would entitle him to conduct a voir dire examination of the ten year old victim and her mother for the purpose of determining whether the victim had been subjected to prior sexual abuse. [95-96]

INDICTMENTS found and returned in the Superior Court Department on May 12, 1982.

The cases were tried before *Peter F. Brady*, J.

*Maureen B. Brodoff*, Committee for Public Counsel Services, for the defendant.

*Edward F. Connelly*, Assistant District Attorney, for the Commonwealth.

CUTTER, J. Ruffen was indicted (in May, 1982) and convicted (on January 6, 1983) of indecent assault and battery on a child under fourteen (G. L. c. 265, § 13B); rape of a child with force (G. L. c. 265, § 22A); and unnatural and lascivious acts with a child under sixteen (G. L. c. 272, § 35A).[1] The Commonwealth presented only the testimony of (a) the victim;

---

[1] The indictment under G. L. c. 265, § 13B, asserted that this offense took place between April 1, 1981, and June 1, 1981, at a time unknown to the grand jurors. The indictments under c. 265, § 22A, and c. 272, § 35A, alleged that these offenses took place at an unknown time between July 1 and August 1, 1981.

(b) her slightly older friend, who had advised her to report Ruffen's action to her mother; (c) the victim's mother; and (d) Detective Frank Biancardi of the Lawrence police department. Ruffen's counsel rested at the close of the Commonwealth's case. Ruffen argues essentially only two issues. The facts concerning each of these are stated below in connection with the discussion of that issue.

1. The victim, then ten years old, lived with her mother, who had been separated from her husband since 1976. Ruffen, a friend of the mother's "boy friend," from time to time slept on a sofa at the mother's house. At some time in the summer of 1981, the victim reported to her mother (and the latter's "boy friend") that Ruffen on various occasions had engaged in sexual molestation of her and had threatened to kill her if she told her mother.

During the evening after the victim's disclosure to her mother of the molestations, Ruffen appeared at the mother's apartment. The victim was "going . . . back and forth from . . . [the mother's] boy-friend to . . . [the mother], crying." Ruffen came "through the door." The mother "just told him that . . . [the victim had told them] what was going on. And he just walked out of the house and left."

About two weeks after the victim made the report about Ruffen to her mother, the mother reported her daughter's complaint to the police. She had waited two weeks to go to the police because she "didn't know what to do."[2] Detective Biancardi, after the first talk with the victim, "tried to locate . . . Ruffen". A telephone call on August 18, 1981, from the victim led him to a school athletic field where Ruffen was playing softball. Ruffen was pointed out to him by the victim. Detective Biancardi asked Ruffen to go with him and other police officers to the police station. Ruffen did so, but apparently was not then put under arrest.

---

[2] The judge excluded the first conversation between the victim and the police because it took place a substantial number of days after the victim's "fresh complaint" to her mother and to the victim's young friend. Compare *Commonwealth* v. *Hannaford*, 10 Mass. App. Ct. 903, 904 (1980).

Detective Biancardi testified[3] that he advised Ruffen "of his rights immediately, told him that . . . [he, Biancardi] was conducting an investigation into complaints against . . . [Ruffen] involving" the victim. "[A]t that point a confrontation took place where . . . [the victim] related her story in front of . . . Ruffen." On cross-examination, Ruffen's counsel attempted to establish that, after the victim had told her story to the police in Ruffen's presence, Ruffen had denied that story.[4]

After an objection by the prosecutor and a bench conference, the trial judge sustained the prosecutor's objection and refused to admit evidence that, at the police station, Ruffen had denied the victim's story. No explicit effort (other than the question quoted in note 3, *supra*) had been made by the prosecutor on direct examination to introduce the substance of the "story" that the victim then told to the police. The victim, however, had testified earlier in considerable detail about Ruffen's molestation of her.

With respect to the police station confrontation, the prosecutor in her summation did not argue that Ruffen by any conduct at the police station showed consciousness of guilt. She did make such an argument,[5] however, with respect to

---

[3] This testimony was given in answer to the prosecutor's very general question, "Would you tell us what occurred at that time?"

[4] On cross-examination the defense inquiry of Detective Biancardi included the following:
"Q. At the station you told us that . . . a confrontation occurred? A. Yes. Q. In which . . . [the victim] told her story, correct? A. Yes. Q. With her mother there, right? A. Yes. Q. And yourself was there and Officer Girgenti, right? A. Yes. Q. . . . . Ruffen was there? A. Yes. Q. . . . . Ruffen admitted he went over to the house from time to time, correct? A. He admitted he had been staying at the house, yes. Q. And he denied — . . . [The prosecutor]. Objection. May we approach the bench?"

[5] The argument was, ". . . Ruffen comes in, and . . . [the victim's mother] says to him, confronts him with the allegations that . . . [the victim] told you, with the things . . . [the victim] has told her. What does William Ruffen do? . . . . He turns around and leaves. Now, I ask you to use your common sense; to think about a person being confronted by these accusations, and to consider whether a person would respond to such accusations, or would a person just leave. I submit to you that by leaving, that was an indication of consciousness of guilt by . . . Ruffen." As Ruffen did not testify, the precise issue presented in *Commonwealth* v. *Nickerson*, 386 Mass. 54, 57-62 (1982), is not before us.

Ruffen's behavior, mentioned above, during his visit to the victim's mother's apartment on the evening of the day when the victim had first complained to her mother about Ruffen's behavior.

Ruffen now contends that the judge should have admitted evidence of his denial at the police station of the story related by the victim in his presence. The prosecutor takes the position that "neither denial of an accusation nor evidence of an accused's silence after being advised of Miranda warnings is admissible." *Commonwealth* v. *Nawn*, 394 Mass. 1, 5 (1985). The prior inquiry by the prosecutor (without any defense objection) on direct examination of Detective Biancardi did not include asking him directly for the substance of anything said either by the victim or by Ruffen. See *Commonwealth* v. *Schnackenberg*, 356 Mass. 65, 70-71 (1969). Compare *Commonwealth* v. *Britland*, 300 Mass. 492, 495-496 (1938). The question asked (see note 3, *supra*), however, was open-ended and could have been the subject of a defense objection. There was (perhaps for tactical reasons) no immediate defense motion to strike any part of the detective's answer on direct examination. That examination was relevant in that it showed events observed by Detective Biancardi at one stage of his investigation, and his reference to "confrontation" was part of an answer to a question which, although unduly general, did not ask specifically for any hearsay.

On cross-examination of the detective it was brought out by defense counsel that Ruffen "admitted he had been staying at the [victim's] house." Then (after the judge had excluded evidence that Ruffen at the police station had denied the victim's story), Ruffen's counsel obtained from Detective Biancardi testimony that Ruffen had "said certain things" after the "confrontation." Defense counsel, however, did not inquire further about what was said at the police station by anyone before Ruffen was released, apparently without then being arrested.

The judge was not required to admit for purposes of "completeness" any conversation of Ruffen at the police station, for the substance of any conversation there had neither been asked for explicitly by the prosecutor nor been admitted.

See *Commonwealth* v. *Watson*, 377 Mass. 814, 823-834 (1979). See also *Commonwealth* v. *Coull*, 20 Mass. App. Ct. 955, 957 (1985); Liacos, Massachusetts Evidence, 443 (5th ed. 1981 & Supp. 1985). It also does not seem that there was any necessity for the judge to admit any denial by Ruffen of the victim's story on any principle of "curative admissibility." See Liacos, *supra* at 443-444; McCormick, Evidence, § 57 (3d ed. 1984); 1 Wigmore, Evidence, § 15 (Tillers rev. 1983). The prosecutor's direct questions put to the detective were sufficiently relevant (a matter largely for the judge's discretion) to be permitted, certainly in the absence of any defense objection.[6] See *Commonwealth* v. *Coull*, 20 Mass. App. Ct. at 957. They involved no inquiry or matter inherently incompetent as evidence, as in *Commonwealth* v. *Wakelin*, 230 Mass. 567, 576 (1918). See and compare *Commonwealth* v. *Errington*, 390 Mass. 875, 878-882 (1984); *Commonwealth* v. *Howard*, 8 Mass. App. Ct. 318, 322-323 (1979).

It would have been wise, in our opinion, for the judge, as matter of discretion, to have admitted evidence of Ruffen's denial at the police station of the victim's story as there told by the victim in his presence. The experienced prosecutor might well have forgone an objection to the defense question. Because the victim had already testified, this would have avoided any risk that the jury would regard the victim's testimony being incorporated by reference in Detective Biancardi's answer (see note 3, *supra*, and related text of this opinion and note 7, *infra*). In the absence of objection to Biancardi's testimony on direct examination and in view of defense counsel's pursuit of the inquiry (see note 4, *supra*), however, we conclude that the judge had discretion to apply the usual rule of the *Nawn* case, 394 Mass. at 4-5.[7]

---

[6] The defense inquiry (see note 4, *supra*) about Ruffen's admission, at least that he had been staying at the victim's house, had some tendency to confirm the relevance of the initial inquiry.

[7] It should be noted that the Commonwealth had already introduced, through the victim's mother, evidence of Ruffen's failure to deny the mother's accusation of Ruffen on the evening when she first had heard of the victim's complaint. It was only Ruffen's conduct on that occasion that was made the subject of argument by the prosecutor as showing consciousness of guilt. See note 5, *supra*.

2. Ruffen contends that his counsel was improperly denied any inquiry whether the victim had been subjected to prior sexual abuse. A "motion in limine" filed for Ruffen sought a pretrial voir dire examination of the victim and her mother. The motion was based in part on information which had been obtained in a social conversation from a "girl friend" of Ruffen who also was a social friend of the victim's family. The purpose of the inquiry would have been to obtain reliable evidence on this matter so that it could be argued that the young victim had the knowledge from actual eariler experience "to fabricate the details of a sexual molestation." It was stated by Ruffen's counsel that an investigator had approached the victim's mother before trial and had asked her if there had been prior molestation of the victim by others. The mother refused to comment. After hearing argument, the trial judge denied the motion in limine, but told defense counsel that he was at liberty to renew his request if "something [that] might [a]rise during trial" should make it appropriate to request reconsideration.

We perceive no preliminary proof of bias or of disposition to fabricate on the part of the victim sufficient to lay a foundation for the inquiry which Ruffen's counsel wished to make. There was no offer of proof before trial and no evidence at trial which tended to show that the child victim (a) had any bias against Ruffen except possibly fear of him induced by his own molestation of her and threats, or (b) had any incentive to fabricate. The highly theoretical suggestions of defense counsel could reasonably be regarded by the trial judge as speculative in the extreme.

Although defense counsel renewed his request at trial after the victim and her mother had testified, we are of opinion that the trial judge had discretion to determine that the proposed inquiry had not been shown to be relevant and that no adequate basis for it had been established. *Commonwealth* v. *Bianco*, 388 Mass. 358, 369 (1983). See *Commonwealth* v. *Chasson*, 383 Mass. 183, 186-187 (1981); *Commonwealth* v. *Nicholas*, 15 Mass. App. Ct. 354, 356 (1983). See also *Commonwealth* v. *Chretien*, 383 Mass. 123, 136-138 (1981). Compare *Commonwealth* v. *Joyce*, 382 Mass. 222, 227-232 (1981). We

think the judge acted well within his discretion, on considerations generally affecting this type of case (including general principles of avoiding inquiry about victims' prior sexual experiences). See, e.g., the so-called "Rape Shield" law, G. L. c. 233, § 21B, and *Commonwealth* v. *Frey*, 390 Mass. 245, 248-252 (1983), and cases there discussed. See as to the scope of discretion in such matters *Commonwealth* v. *Nicholas*, 15 Mass. App. Ct. at 356.

*Judgments affirmed.*