730 P.2d 921

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Randy Alan PARKER,
Defendant-Appellant.**

No. 15588.

Supreme Court of Idaho.

Nov. 19, 1986.

Rehearing Denied Jan. 16, 1987.

Renae Hoff, Caldwell, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., and Myrna A.I. Stahman, Deputy Atty. Gen., for plaintiff-respondent.

HUNTLEY, Justice.

A jury convicted Randy Alan Parker of forcible rape. On appeal, Parker argues the district court erred in admitting the prosecutrix's taped statement made between two and three hours after the alleged rape. Parker further argues the district court erred in barring evidence of his character for the trait of sexual non-ag-

gression towards women and the victim's admission that she left home the day before the alleged rape because she was pregnant.

The case arises from the following facts: The fourteen-year-old victim was walking alone on a road near Lake Lowell one evening at about midnight. A car driven by Parker approached her. She did not know him. There was a woman passenger in the car named Peggy Bauder, a friend of Parker's and unknown to the victim. Parker asked the victim if she wanted a ride and she eventually got in the car. Bauder testified that when asked where she was going, the victim said, "I don't know."

In Marsing, Idaho, Parker stopped the car to make a phone call which lasted just a few minutes. The victim remained in the car, though she admitted at trial she could have gotten out. The three then drove to a house "far out in the country" and went inside. There, the victim told Bauder that she had left home that day because she was pregnant. Bauder then went to bed leaving the victim alone in the front room with Parker. At trial the court struck Bauder's testimony as to the victim's admission of her pregnancy on grounds that I.C. § 18–6105 (1984), the rape-shield law, made inadmissible any references to the victim's prior sexual conduct.

The victim, while in the house to which Parker had taken her, picked up the phone and called her home. This occurred between five o'clock and five-thirty in the morning. Her mother answered. When the victim said "Mom," Parker grabbed her arm, forcing the receiver to the hook. Parker then made advances towards her, which culminated in sexual intercourse. Shortly thereafter, at about six-thirty in the morning, the victim went to the residence of the Durrant family, which was near the house to which Parker had driven her. At the Durrant's, she called her mother and asked that the family pick her up and to bring the police. The victim's father called Brent Mabbott, an Idaho Fish and Game officer and a cousin of the victim's,

and asked him to meet the family at the Durrant residence.

At the Durrant's, within three hours after the alleged rape, Mabbott tape recorded a statement of the victim in which she contended she had been raped. The trial court allowed the tape to be played to the jury. Later, when the defense presented its case, it offered as character evidence the testimony of Joseph Shaw, to the effect that Parker was not violent and, specifically, was not sexually aggressive towards women. The court denied admission of this evidence on grounds that the evidence of rape indicated that while Parker used his weight to hold the victim down, he did not use enough violence to raise an inference that he had a trait for violence which would justify admitting rebuttal character evidence of Parker's reputation for sexual non-aggression towards women. The jury found Parker guilty of forcible rape, declined to find him guilty of statutory rape, and found him not guilty of kidnapping.

I.

■ The first issue is whether the district court erred in denying the admission of character evidence of Parker's trait for sexual non-aggression towards women. To properly review a challenged denial of evidence, this court must know exactly what evidence the lower court denied. This requires that an offer of proof be made at trial. Such an offer must include evidence of all the specific facts which the proffered testimony tends to establish, rather than mere "argumentative conclusions." The *Boise Association of Credit Men, Ltd. v. United States Fire Insurance Co.,* 44 Idaho 249, 260, 256 P. 523, 526 (1927). In *Credit Men,* the offer of proof asserted a Mr. Smith had committed several acts of arson as part of a continuing scheme to collect insurance money. The offer included evidence of his motive to commit arson. However, the trial court excluded the evidence, and this court affirmed, on grounds the offer of proof included no evidence that the previous fires were set, or that Smith

could have set them. *Credit Men*, 44 Idaho at 260, 256 P. at 526.

�as In the instant case, Parker's counsel called a reputation witness. The prosecution objected. In the ensuing colloquy, Parker's counsel stated in general terms that she wanted to call some witnesses who knew Parker socially and in business, who would testify that Parker had a reputation for being sexually non-aggressive towards women. At no point did Parker's counsel state for the court and the record the specific reputation testimony she intended to elicit, or the foundational testimony that would tend to establish all the facts requisite to the admission of reputation evidence. For example, counsel did not state explicitly the extent to which the witnesses were familiar with the circles in which Parker moved, sufficient for the court to rule on the adequacy of a foundation for reputation evidence. Nor did counsel state explicitly whether the character witnesses based their perception of Parker's reputation either upon the affirmative statements of others that Parker did not behave in a sexually aggressive manner toward women, or upon a lack of statements indicating Parker behaved in a sexually aggressive manner towards women.[1] For these reasons, there is no proper offer of proof

preserved for appeal. As stated in *Credit Men:*

> An offer cannot be made in general terms, but must be so made as to give the court an opportunity to rule on the specific testimony, and must embrace all the facts showing the admissibility of the evidence, and must be of facts, and not of conclusions. *Credit Men*, 44 Idaho at 261, 256 P. at 256.

The inadequacy of Parker's offer of proof prevents this court from determining that the district court erroneously excluded reputation evidence of Parker's lack of a trait for sexual aggression towards women. On this issue we affirm the trial court.

## II.

We turn to the issue of whether the district court erred in admitting the victim's taped statement made to an Idaho Fish and Game officer two to three hours after the alleged rape. The prosecution offered the out-of-court statement to prove the truth of the matter asserted—that Randy Parker had raped the victim. The statement was, therefore, hearsay. *Isaacson v. Obendorf*, 99 Idaho 304, 309, 581 P.2d 350, 355 (1978).

The prosecution argues the district court properly admitted the statement under the excited utterance exception to the rule

---

1. Parker's counsel strongly indicated in the following colloquy that the reputation testimony would be based upon the fact the witnesses had never heard anyone discuss Parker's reputation for sexual aggression towards women:

    MR. ANDERSON [prosecuting attorney]: Your Honor, if she's telling me that Joe Shaw is going to tell us that he's asked other members of the community whether this guy's got a trait for sexual aggression—

    MS. HOFF [defense attorney]: Your Honor, that's not a requirement. In Idaho, when you talk about character evidence, it's not proper then—if the prosecutor asks the person if they've ever heard anyone say that he has this kind of reputation, that's not proper cross.

    In some states it is, but in this jurisdiction, just because they haven't heard about his reputation or haven't discussed it with other people does not mean that he doesn't have that reputation in the community where he works and lives.

    And the only other thing that I can say about that is I know men who I could honest-

ly say I've never discussed the fact—you know, I've discussed with people that he has a reputation for not being sexually aggressive, but that's really what the gist is here. You can still have a reputation for certain things and not have it discussed among other members of the community.

Testimony offered to prove good reputation, when based on the witnesses' complete lack of exposure to discussion of the subject's bad reputation, is inadmissible in Idaho, contrary to defense counsel's assertion. *State v. Trego*, 25 Idaho 625, 650, 138 P. 1124, 1132 (1914). A character witness's lack of exposure to discussion of bad reputation creates a weak negative inference of good reputation for all character traits. The weak negative inference is outweighed by the inference that the individual has no particular reputation for the trait in issue or the inference that the witness is simply unfamiliar with the individual's reputation and is therefore incompetent to testify. As held in *Trego*, such evidence is inadmissible as a matter of law.

**4**

against the admission of hearsay. That exception has two requirements. "First, there must be an occurrence or event sufficiently startling to render inoperative the normal reflective thought processes of an observer. Second, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought." E. Cleary, *McCormick on Evidence,* § 297 (3d ed. 1984). Whether the taped statement met this test lay within the district court's exercise of sound discretion. We must affirm the admission of the evidence unless the court abused its discretion. *State v. Randolph,* 99 Ariz. 253, 408 P.2d 397, 398 (1965); *Frazee v. State,* 79 Okl.Cr. 224, 153 P.2d 637, 642 (1944).

In sex crime cases, the excited utterance exception often receives broader application than in other cases. From the traditional admission of evidence of the fact of a victim's complaint of sexual assault, there has developed an expansion of the excited utterance exception under which many jurisdictions admit not only the fact of complaint, but its details. Six Wigmore, Evidence in Trials at Common Law, § 1761 and cases cited in n. 2, p. 243–44 (Chadbourn rev. ed. 1976). "The trend is to allow details of the offense and the identity of the offender, a result which appears wholly justifiable." E. Cleary, *McCormick on Evidence,* § 297 at p. 859 (3d ed. 1984). The tendency to admit such statements, even when made hours after the event, probably lies in their high probative value. Given that sexual assault crimes violate one's most intimate physical and mental feelings, the victim can reasonably be expected not to discuss the crime until meeting with a family member, close friend, law enforcement agent, or other trusted individual. *State v. Adams,* 394 So.2d 1204 (La.1981). In *Adams,* the court affirmed the trial court's admission of a five-year-old victim's hearsay complaint made eight to ten hours after the rape, where that was the earliest opportunity the child had to report the occurrence to a close family member.

In the instant case, the victim got away from Parker, apparently within a few minutes after the rape, went directly to the home of a total stranger, called her parents, and waited silently for their arrival. When they did arrive, she did not immediately tell them what happened. Instead, she waited a few minutes for her cousin, a State Fish and Game officer, to arrive. She then related to him the events of that morning, which he taped. According to the Fish and Game officer's testimony, at the time of her statement, she was crying, red-eyed, looked very tired, and looked like a lot had happened to her.

A sexual assault is one of the most distressing experiences a person could have. The distress is likely to remain bottled up in the victim until she or he can talk about what happened. Since a fourteen-year-old girl told a trusted individual of her alleged sexual assault at virtually the first opportunity she had while in a state of obvious emotional distress, the district court did not abuse its discretion in admitting her taped statement as an excited utterance.

### III.

Parker's third major contention is that the district court erred in excluding the victim's statement to Ms. Bauder that she had left home because she was pregnant. The district court excluded this statement on the ground that "I.C. § 18–6105 [Idaho's "rape shield law"] provides clearly in the prosecution of the crime of rape, evidence of the prosecuting witness' previous sexual conduct shall not be admitted nor reference made thereto."

I.C. § 18–6105 reads:

**18–6105. Evidence of previous sexual conduct of prosecuting witness.**—In prosecutions for the crime of rape, evidence of the prosecuting witness' previous sexual conduct shall not be admitted nor reference made thereto in the presence of the jury, *except* as provided hereinafter. The defendant may make application to the court before or *during* the trial for the admission of evidence con-

cerning the previous sexual conduct of the prosecuting witness. Upon such application the court *shall* conduct a hearing out of the presence of the jury as to the *relevancy* of such evidence of previous sexual conduct and shall limit the questioning and *control* the admission and exclusion of evidence upon trial. Nothing in this section shall limit the right of either the state or the accused to impeach credibility by the showing of prior felony convictions. (Emphasis supplied).

Defense counsel argued at trial, and now on appeal, that the statement was not offered as evidence of the victim's prior sexual conduct, but as evidence of her belief that she was pregnant. Parker convincingly argues that the victim's belief in her own pregnancy would provide a motive to fabricate her rape testimony. That is, she might try to blame the pregnancy on the rape, and thereby deflect any suspicion, particularly on the part of her parents, that she had engaged in consensual sexual activity at her young age.

However, the court did not inquire into the relevancy of the evidence to her motive to fabricate, which inquiry is mandated by the statute.

The statutory requirement of a judicial inquiry into the relevancy of evidence of prior sexual conduct is a legislative recognition that, where the defendant denies ever having had intercourse with the prosecutrix, then evidence of her prior unchastity is immaterial, since it is relevant to consent, and consent would not be in issue in such a case. *People v. Battilana,* 52 Cal.App.2d 685, 126 P.2d 923, 929 (1942). The defense in the instant case appears to have been consent, based on defense counsel's attempt on cross-examination of the victim to show she did not resist Parker's sexual advances.

■ In rape cases where the defense is consent, evidence of prior unchastity may be relevant and material, under I.C. § 18–6105, on the issue of consent. Moreover, whether consent is an issue in the case, the prosecutrix's motive to fabricate, that is,

her credibility, is always in issue. Therefore, the victim's admission of her belief she was pregnant was relevant, as a matter of law, on the charge of forcible rape and should not have been summarily excluded. This error requires that the conviction be set aside and the case be remanded for retrial or other appropriate proceedings.

Reversed and remanded for further appropriate proceedings.

BISTLINE, J., concurs.

SHEPARD, J., concurs in I and II, concurs in the result in III.

DONALDSON, C.J., and BAKES, J., concur in I and II, dissent in III.

BAKES, Justice, dissenting from Part III:

Litigation regarding "rape-shield" statutes is not new. The statutes have been challenged on a variety of grounds every since they were first enacted. The issue before us is whether Parker is entitled to introduce evidence of "prior sexual conduct" in contravention of the policy of the "rape-shield" statute in order to prove the victim had a "motive to fabricate" her claim of rape.

## I

On appeal Parker claims that the district court erred in excluding the victim's statement to Ms. Bauder that she [the victim] had left home because she was pregnant. The district court properly excluded this evidence under Idaho's "rape-shield" statute. I.C. § 18–6105. The statute reads as follows:

"**18–6105. Evidence of previous sexual conduct of prosecuting witness.**—In prosecutions for the crime of rape, evidence of the prosecuting witness's previous sexual conduct shall not be admitted nor reference made thereto in the presence of the jury, except as provided hereinafter. The defendant may make application to the court before or during the trial for the admission of evidence concerning the previous sexual conduct of

the prosecuting witness. Upon such application the court shall conduct a hearing out of the presence of the jury as to the relevancy of such evidence of previous sexual conduct and shall limit the questioning and control the admission and exclusion of evidence upon trial. Nothing in this section shall limit the right of either the state or the accused to impeach credibility by the showing of prior felony convictions."

The statute establishes the policy that the "prosecuting witness's previous sexual conduct *shall not be admitted nor reference made thereto* in the presence of the jury...." I.C. § 18–6105 (emphasis added). The statute does contain an exception. It states that the proponent of the prior sexual conduct evidence "may make application to the court ... *during* trial," I.C. § 18–6105 (emphasis added), and then directs the district judge to hold a hearing outside of the jury's presence. This hearing is clearly a relevancy hearing.

In a criminal trial the judge is vested with "control[ling] the admission and exclusion of [this type of] evidence upon trial." I.C. § 18–6105. Under the wording of this statute the district judge is clearly given the discretion to decide if this sort of evidence is admissible. The rule in Idaho has always been that "[a] trial court has broad discretion in the admission of evidence at trial, and its judgment will *only* be reversed when there has been a clear abuse of discretion." *State v. Tierney*, 109 Idaho 474, 477, 708 P.2d 879, 882 (1985). *See State v. Terry*, 98 Idaho 285, 561 P.2d 1318 (1977). Keeping this in mind, it is necessary to evaluate the defendant Parker's claim.

The essence of Parker's argument that the victim had a motive to fabricate her claim of rape is that the victim believed she was pregnant and ran away from home because of this belief. Her claim that Parker raped her would then be used to cover up this alleged pregnancy. In short, Parker argues that the victim's belief that she was pregnant gave her "a motive to fabricate."

Parker pleaded not guilty to the charge that he raped the victim. He has not claimed (contrary to the majority's assertion) that the victim consented to have sex with him. Indeed, consent could not be a defense in this case. The victim was fourteen years old and below the age of consent. Rather, Parker simply denied that there were sexual relations between himself and the victim. The medical evidence demonstrated that the victim had been sexually abused on the night of the alleged rape. Parker's own witness, Ms. Bauder, placed Parker and the victim together on the night of the alleged rape. Parker was charged in the alternative with statutory rape and forcible rape. "The purpose of these [statutory rape] statutes is to protect young girls from illicit acts of sexual intercourse by making their consent legally impossible." 65 Am.Jur.2d *Rape*, § 15 (1972); *see State v. Palin*, 106 Idaho 70, 72, 675 P.2d 49, 51 (Ct.App.1983); *State v. Huntsman*, 115 Utah 283, 204 P.2d 448, 451 (1949). Consent was not at issue, and if Bauder's testimony was offered to prove consent it is clearly inadmissible.

The evidence in question was offered, without a prior application to the court by Parker's attorney, in direct examination of Parker's own witness, Ms. Bauder. The questioning of Bauder went as follows:[1]

"[Parker's attorney] Q. Was there anything else in the discussion?

"[Bauder] A. She said she was leaving because she was pregnant.

---

1. It is important to note that the issue before the Court does not rise to the level of a sixth amendment constitutional challenge. The right to confrontation is the right to confront and cross examine hostile witnesses. As the United States Supreme Court has stated, the "major reason underlying the constitutional confrontation rule is to give a defendant charged with a crime an opportunity to cross-examine the witness against him." *Bruton v. United States*, 391 U.S. 123, 126, 88 S.Ct. 1620, 1623, 20 L.Ed.2d 476 (1968). Here, Parker was not denied his right to cross examine the state's witnesses. The evidence that was excluded was offered on direct examination by Parker's own witness and, in all instances, Parker fully cross examined the state's witnesses.

....

"[Mr. Anderson]: Your Honor, we request a hearing outside the presence of the jury after that last response." R. at 270.

Upon the state's request (not the defendant's application, as the statute provides), an I.C. § 18–6105 relevancy hearing was held out of the presence of the jury. The district court judge felt that the evidence offered was evidence of prior sexual conduct and was subject to the protection of the Idaho "rape-shield" statute. In this hearing, Parker's attorney stated, "We are not introducing this particular piece of evidence with regard to prior sexual conduct," R. at 271, and further on stated:

"This testimony is not being adduced to indicate that this young lady had prior—it's not being offered for the truth of the matter asserted. It's being offered at this particular point—it goes to motive, motive to falsify by the young lady, by [the victim]. It's not being offered here to show that she engaged in prior sexual conduct. That's not the purpose for it." R. at 272.

Following this statement, the judge went on to make his ruling.

"THE COURT: It doesn't matter what the purpose is. The statement clearly comes within the admonition of 18–6105 because you can't have—you can't be pregnant that I know of, being the father of six children, without having prior sexual conduct. And to testify that someone indicated that they were pregnant is

in effect admitting that they have had previous sexual conduct.

And in 18–6105 provides clearly in the prosecution of the crime of rape, evidence of the prosecuting witness's previous sexual conduct shall not be admitted nor reference made thereto.

And I think that clearly the statement just made by this witness is a reference which can clearly be interpreted to mean that the prosecuting witness had previous sexual conduct.

Therefore, I will strike that statement and admonish the jury both now and in the final instructions to ignore any such statement." R. at 272–273.

The foregoing record demonstrates that Parker's attorney had an opportunity to demonstrate that the relevancy of the evidence outweighed the protection intended by the statute, and failed to convince the district court judge.[2]

It is axiomatic in our legal system that for evidence to be admitted, that evidence must be relevant. For Parker's evidence of a "motive to fabricate" to be at issue and thereby make the proffered evidence relevant, Parker was required to lay an evidentiary foundation to demonstrate relevance. *State v. Crawford*, 99 Idaho 87, 577 P.2d 1135 (1978); *State v. Farris*, 48 Idaho 439, 282 P. 489 (1929). *See also* Idaho Rules of Evidence (I.R.E.) 401–403.

"If a defendant claims a victim's past sexual conduct is relevant, it is up to the

---

**2.** Regarding Judge Williams' opening statement that "it doesn't matter what the purpose is. The statement clearly comes within the admonition of 18–6105...." This comment must be read in context as a response to Parker's attorney's argument, which indicated that the attorney believed the evidence did not fall under the rape-shield statute. Parker's attorney stated:

"Your Honor, I don't have a quarrel with the law, and I agree with the law in this particular case.

This testimony is not being adduced to indicate that this young lady had prior—it's not being offered for the truth of the matter asserted. It's being offered at this particular point—it goes to motive, motive to falsify by the young lady, by [the victim]. It's not being offered here to show that she engaged in prior

sexual conduct. That's not the purpose for it." R. at 272.

It is clear from the transcript that the attorney felt the evidence was outside the scope of the rape-shield statute and that Parker had an opportunity to argue the relevancy of the evidence. A trial court judge is in a position where he constantly weighs the relevancy of evidence offered. Judge Williams had ample opportunity to weigh the relevancy of the statement, particularly in view of the lack of foundation which 18–6105 requires, and he based his decision on what counsel said and the lack of any other foundation evidence. The previous evidence had failed to establish a relevancy foundation or even to give a hint that the victim had a motive to fabricate.

8

defendant to make a preliminary showing that the issue is material to an issue in the case. This is not raised merely by asserting that it is so. There must be a showing of a reasonable basis for believing that the past sexual conduct is pertinent. If there is no such showing, questions concerning past sexual conduct are to be excluded." *Allen v. State,* 700 S.W.2d 924, 929 (Tex.Crim.App.1985). Parker failed to do this, and the evidence "she said she was leaving home because she was pregnant" stands alone.

The district court judge was required under I.C. § 18–6105 to weigh the probative value of the evidence against the prejudicial effect of the evidence only after Parker had made a proper foundation. The record is clear—no probative value was demonstrated, and therefore the ruling that the evidence was not admissible is clearly correct and not an abuse of discretion.

The Washington case of *State v. Peterson,* 35 Wash.App. 481, 667 P.2d 645 (1983), came to the same conclusion regarding Washington's rape-shield statute. In that case, the defendant sought to offer evidence of the victim's prior sexual conduct to prove a "motive to fabricate" and the Washington court rejected it, stating:

"Here Peterson failed to lay a foundation for his claim that Kathy was fabricating this incident. He made no proof that her prior reports of sexual abuse were untrue, or that her story was so similar to the previous incidents that she was probably fantasizing. Nor did Peterson demonstrate that Kathy's motive to fabricate was her need for attention because she was unhappy living at her grandmother's house. In fact, the record supports a contrary conclusion. Inasmuch as Peterson did not present the trial court with any evidence of relevancy, we cannot say the trial court abused its discretion by excluding evidence of prior sexual abuses." *State v. Peterson, supra* at 648 (citations and footnotes omitted).

The protection offered by a "rape-shield" statute cannot be avoided by randomly link-

ing inflammatory evidence of prior sexual conduct to a defense such as a motive to fabricate or bias. The remaining rules of evidence must still be dealt with. In this case, there was not only an inadequate showing that the "motive to fabricate" claim was relevant, there was no showing that such a claim even existed in a remote sense.

The majority's assertion that "the prosecutrix's motive to fabricate, that is, her credibility, is always an issue[;] [t]herefore, the victim's admission of her belief she was pregnant was relevant, as a matter of law, on the charge of forcible rape and should not have been summarily excluded," *ante* at 925, is simply incorrect. More than a statement by Parker's attorney in a relevancy hearing is needed to demonstrate the existence of a defense. The issue raised by Parker is not a new question in this state.

*State v. Palin,* 106 Idaho 70, 675 P.2d 49 (Ct.App.1983), deals with a factual pattern similar to this case. In *Palin* the evidence was offered to attack the prosecuting witness's credibility on a "motive to fabricate" theory. Judge Burnett, writing for the Court of Appeals, stated:

"However, we have not been cited—and we have not found—authority that mere unchastity is a proper basis to impeach a witness' general credibility. We do not gainsay that past sexual conduct may, in some circumstances, be relevant to a question of credibility. For example in *United States v. Dorsey,* 16 M.J. 1 (C.M.A.1983), the Court of Military Appeals held evidence of a rape victim's prior sexual conduct to be admissible. The evidence in that case supported a defense theory that the victim had fabricated the rape story in retaliation for the accused's calling her a 'whore.' Such evidence goes beyond a generalized showing of unchastity. It tends to show a particular motive for giving biased testimony. In contrast, the evidence of unchastity presumably sought to be elicited in this case would have contained no such showing. *Palin made no offer to prove a connec-*

tion between prior sexual conduct and a motive or propensity to fabricate. Without more, the victim's prior sexual conduct was not relevant to her general credibility as a witness. We conclude that the district judge properly refused to allow inquiry into the victim's sexual history." *State v. Palin,* 106 Idaho at 74, 675 P.2d at 53 (emphasis added).

*Accord State v. Gabrielson,* 109 Idaho 507, 509, 708 P.2d 912, 914 (Ct.App.1985). *See Commonwealth v. Ruffen,* 21 Mass.App. 90, 485 N.E.2d 190 (1985) (holding, where there was no preliminary proof of bias or of disposition to fabricate on the part of the victim sufficient to lay a foundation, the evidence of prior sexual conduct is inadmissible to show fabrication); *Winfield v. Commonwealth,* 225 Va. 211, 301 S.E.2d 15 (1983) (holding that evidence of past sexual conduct, to be admissible under a "motive to fabricate" theory, must show a pattern of behavior which directly relates to the conduct charged against the complaining witness). The statement in *Palin* is equally true here. To paraphrase that opinion, Parker made no offer of evidence which proved a connection between prior sexual conduct and a motive to fabricate. Without more, the victim's prior sexual conduct was not relevant to her general credibility as a witness.

The rape-shield statute makes the evidentiary question in this case different than the typical relevancy question. The policy protecting a prosecuting witness/victim changes the relevancy situation as pointed out by the Texas and Washington state cases quoted above. While a mere asser-

tion of a defense in the ordinary case might be sufficient to raise that defense, the presence of the rape/shield statute increases the showing that a defendant must make.

The majority opinion as it is written overrules *State v. Palin, supra,* and also removes the substance from Idaho's former and current rape-shield statutes. According to the authorities, the intent behind the rape-shield statutes is to avoid the archaic and sexually demeaning practice in rape cases of putting the prosecuting witness/victim's chastity on trial. In formulating rape-shield statutes, legislatures have intended that evidence of a rape victim's past sexual behavior should not be routinely admitted without establishing its relevancy with other evidence or circumstances which goes beyond the usual claim that it affects credibility. In other words, the theory to fabricate must have already been established by other evidence prior to the admission of the questioned sexual conduct evidence. For the foregoing reasons, the majority opinion incorrectly states the law, and the decision of the district court should be affirmed.

## II

In the alternative, even if the majority opinion actually were a correct statement of law, failure to admit the evidence would constitute harmless error. Idaho Criminal Rule 52 defines harmless error as "[a]ny error, defect, irregularity or variance which does not affect substantial rights ...," and directs this Court that such error "shall be disregarded." I.C.R. 52. The traditional test for non-constitutional[3] harmless error

---

3. This Rule 52 harmless error test is not to be confused with the constitutional harmless error test. The majority opinion incorrectly applies the constitutional test when it should be applying Idaho Criminal Rule 52, which is a less strict standard. The constitutional harmless error test states, "To hold an error as harmless [in a criminal case], an appellate court must declare a belief, beyond a reasonable doubt, that there was no reasonable possibility that such *evidence* complained of contributed to the conviction." *State v. Sharp,* 101 Idaho 498, 507, 616 P.2d 1034, 1043 (1980), *citing Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 829, 17 L.Ed.2d 705 (1967) (emphasis added). The al-

leged error in this case, as explained, does not rise to constitutional levels, and therefore this stricter approach to harmless error is not invoked. *Chapman v. California, supra,* created the concept of "constitutional harmless error." Prior to that time, statutory harmless error rules were not applied when constitutional error was detected. In *Chapman,* the Supreme Court prefaced its analysis with the point that:

"Before deciding—whether there can ever be constitutional harmless error and whether the error here was harmless—we must first decide whether state or federal law governs. *The application of a state harmless-error rule is, of course, a state question where it involves*

in Idaho states, "[I]f the evidence of the defendant's guilt is satisfactory, that is such as ordinarily produces moral certainty, or conviction in an unprejudiced mind, and the result would not have been different had [an error in the trial not been committed, then] the case will not be reversed...." *State v. Gilbert*, 65 Idaho 210, 219, 142 P.2d 584, 588 (1943). *See also State v. Brill*, 21 Idaho 269, 275–76, 121 P. 79, 80–81 (1912); *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct.App. 1983). Under I.C.R. 52, such analysis is a necessary final step in the disposition of every appeal that finds an error on review.

In this case there are several reasons why this error is harmless when the correct standard, the Rule 52 standard, is applied. First, there was direct physical evidence that the victim had been raped, that she was only fourteen years of age, and that the victim and the defendant were together all that night when the rape occurred. Second, the offered evidence stood alone and was not supported by any other evidence that might substantiate Parker's claim that the victim believed she was pregnant. As a matter of record, all of the testimony regarding why the victim left home contradicted the offered evidence. The clear and substantial testimony demonstrates that the victim left home because of a family dispute. Finally, there was no offer by Parker to demonstrate that the evidence was relevant. Such a request should have been made to the district court judge to preserve on the record the basis for the appeal. Parker failed to do this.

Accordingly, the defendant did not meet the enhanced threshold required by Idaho's rape-shield law, I.C. § 18–6105, and *State*

*v. Palin*, 106 Idaho 70, 675 P.2d 49 (Ct.App. 1983), and the district court did not err in striking the statement in question. For the foregoing reasons, if there was error it did not affect the substantial rights of Parker and should be disregarded.

I would affirm the district court decision in total.

DONALDSON, C.J., concurs.

---

*only errors of state procedure or state law."* *Chapman v. California, supra* at 24, 87 S.Ct. at 829 (emphasis added).

"Thus, the test for harmless constitutional error is stricter than its statutory [referring to Federal Rule 52 and its state counterparts] counterpart." *United States v. Lane*, 474 U.S. 438, 106 S.Ct. 725, 738, 88 L.Ed.2d 814 (1986) (Brennan, J., dissenting). Because the Federal Rule 52(a) is exactly the same as I.C.R. 52 it is instructive to look at the federal harmless error test. This test was formulated in *Kotteakos v. United States*,

328 U.S. 750, 764, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946), which stated:

"If, when all is said and done, the [court] is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand...."

This *Kotteakos* standard is the appropriate test for determining the harmlessness of non-constitutional error, *United States v. Thompson*, 716 F.2d 248 (4th Cir.1983), and this is the rule in Idaho.