881 P.2d 553

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jesse Earl STOVER, Defendant–Appellant.**

No. 20355.

Court of Appeals of Idaho.

Aug. 9, 1994.

Petition for Review Denied Oct. 5, 1994.

Alan E. Trimming, Ada County Public Defender, Deborah A. Whipple, Deputy Public Defender (argued), Boise, for appellant.

Larry EchoHawk, Atty. Gen., Jean M. Fisher, Sp. Deputy Atty. Gen. (argued), Boise, for respondent.

LANSING, Judge.

Jesse Earl Stover was found guilty by a jury of one count of lewd and lascivious conduct with a minor, I.C. § 18–1508, based upon evidence that he had sexually molested a male child. He appeals his conviction, asserting that the trial court should have granted his motion for a mistrial after jail personnel prevented him from communicating with his attorney during an overnight recess. He also asserts that the court erred by admitting into evidence hearsay statements of the young victim, admitting a videotape of an interview of the victim, and excluding a videotape of a prior interview of the victim regarding unrelated allegations of abuse. Stover also contends that his sentence, a unified life sentence with a minimum period of ten years' incarceration, is unreasonable. We find no error by the trial court and no abuse of the court's sentencing discretion. Therefore we affirm.

## I

### BACKGROUND

The allegations against Stover elicited at trial were as follows. On December 30, 1991, Stover's girlfriend was taking care of the six-year-old victim, J.S., and his brothers because their mother had been hospitalized following a car accident. Stover's girlfriend took the children to Stover's trailer to bathe because their own house had no hot water. When his girlfriend left for a brief period, Stover led J.S. into a bedroom, closed the door, and kissed J.S. on the lips and placed

his mouth on the child's penis. When Stover's girlfriend returned, she observed J.S. in the bedroom with Stover but did not see any inappropriate conduct. She described the child as acting differently upon her return, but J.S. did not mention the molestation to her.

Shortly after the event, J.S. told his eight-year-old brother what had happened. Later that evening, Danny Cram, a friend of J.S.'s family affectionately known by the children as "Uncle Shaggy," arrived to check on the children. After J.S. was put to bed, he asked to speak to Cram. At that point, J.S. told Cram that Stover "put his mouth on my peter." Cram notified the police, and Stover was arrested for lewd and lascivious conduct with a minor under sixteen, I.C. § 18–1508.

On appeal, Stover contends the trial court erred in denying a motion for a mistrial after jailers prevented Stover from contacting his attorney from the jail during an overnight recess in the trial. He also asserts that the trial court erred in several evidentiary rulings.

## II

### MOTION FOR MISTRIAL

■ On the second day of trial Stover moved for a mistrial. He alleged that he had been denied his right to counsel by officials of the Ada County jail when they refused to allow him to telephone his attorney during the overnight recess. Stover asserts that the denial of the mistrial motion was error.

The district court determined that the State had interfered with Stover's ability to communicate with his attorney by not allowing him to telephone counsel from the jail. The court then granted a recess in the trial to allow Stover and his attorney an opportunity to confer privately. More than an hour later, Stover's attorney returned to the courtroom and informed the court that the defense was ready to go forward with the trial. The State contends therefore, that even if the alleged interference with access to counsel occurred, Stover can show no prejudice because he was given an opportunity to meet with his attorney before the trial resumed. Stover responds that where the

right to counsel is denied, the right to relief is not dependent upon a showing of prejudice.

The United States Supreme Court has addressed similar circumstances. In *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), the Supreme Court held that a trial court's order prohibiting the defendant from speaking with his attorney during an overnight recess violated the defendant's right to counsel. There the defendant had testified on direct examination until the trial recessed for the night. The State's cross-examination was scheduled to begin the next morning, and the district court, fearing that the defendant would be coached by his attorney during the overnight recess, prohibited any contact. The Fifth Circuit Court of Appeals held that because no prejudice was shown, the defendant was not entitled to relief. The Supreme Court, however, without addressing the question of prejudice, ruled that the prevention of contact with counsel during an overnight recess was an impermissible infringement upon the right to counsel which necessitated a new trial.

In *Perry v. Leeke,* 488 U.S. 272, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989), the Supreme Court again reviewed a trial court's order that had impeded communication between a criminal defendant and his attorney. In *Perry,* the district court had prohibited discussion between the defendant and his attorney during a fifteen-minute recess. The defendant was at that time completing his direct testimony and was about to be subjected to cross-examination. The Supreme Court rejected an argument that a deprivation of access to counsel will warrant a new trial only if the defendant demonstrates some resulting prejudice. The Court held that prejudice is not an essential element of a claim for *denial* of the assistance of counsel, distinguishing such claims from those for *ineffective assistance* of counsel where the defendant must show not only deficient performance by counsel but also that the deficiency prejudiced the defense. *Id.* at 278–80, 109 S.Ct. at 599–600. The Court in *Perry* nonetheless declined to reverse the conviction. It held that an order precluding consultation with counsel during a brief break in the trial

did not interfere with the right to counsel because a criminal defendant does not normally have a right or an opportunity to confer with counsel while he is giving testimony.

■ The import of the *Geders* and *Perry* decisions is clear. When a defendant actually has been denied the assistance of counsel, prejudice is presumed, and a showing of actual prejudice is not a prerequisite for a right to relief. We conclude, however, that this rule does not necessitate a new trial in Stover's case. As noted above, the district court recognized that there had been interference with Stover's access to counsel during the preceding evening at the jail. Unlike the trial court in *Geders*, the district court here did not compel the defendant to continue the trial without consultation with his attorney. Rather, the court recessed to permit Stover to conduct any consultation with counsel that had been prevented during the overnight recess. When the trial resumed, Stover's attorney stated that he was ready to proceed and did not indicate that he was still disadvantaged by the State's actions. Although Stover's attorney asserted prior to the recess that he had intended to contact potential witnesses after his anticipated evening discussions with Stover, and he averred that those witnesses would be unavailable for consultation during the daytime, after the recess the attorney made no mention of any potential witnesses that he was unable to contact. Moreover, it is apparent from the record that the district court would have recessed for as long as necessary to allow Stover to contact witnesses and prepare his defense. The court placed no time limit on the recess.

■ Under these circumstances, assistance of counsel was not denied—it was only briefly delayed. Where, as here, the court learns of the State's interference before trial resumes, then stops the proceeding and allows the defendant adequate time to confer with his attorney and prepare his defense before continuing with the trial, the initial denial of counsel itself has been rectified.

The defendant cannot then complain that he was required to go through any part of the criminal proceeding without the aid of counsel. Although some courts considering similar circumstances have analyzed this issue as one of prejudice, e.g. *McFadden v. State*, 424 So.2d 918 (Fla.App.1983) (allowing defendant to confer with counsel before proceeding corrected any prejudice); *Wooten–Bey v. State*, 76 Md.App. 603, 547 A.2d 1086 (1988) (same), we think the better analysis is that there effectively has been no denial of counsel inasmuch as the defendant was allowed to confer with his attorney before the trial resumed.

Because Stover was not actually deprived of the assistance of counsel, his motion for a mistrial was properly denied.

## III

### VICTIM'S HEARSAY STATEMENTS TO CRAM

Stover next asserts that the court erred by admitting hearsay testimony about the victim's statements to Danny Cram. At trial Cram testified to statements that J.S. made several hours after the alleged molestation. Cram stated that after J.S. was put to bed for the evening, he asked to talk to Cram and, following several moments of hesitation and unwillingness to speak openly, the child described being molested by Stover. Cram further testified that J.S. said he had been locked in the back bedroom with Stover and that his brother, R.S., couldn't get to him.

These statements were hearsay, for they were out-of-court statements offered in evidence to prove the truth of the matter asserted. I.R.E. 801(c). The State contends, however, that J.S.'s revelation to Cram was an "excited utterance" which is excepted from the rule of hearsay exclusion, I.R.E. 803(2).[1]

■ Whether a statement falls within the excited utterance exception to the hearsay rule is a question that is left to the sound

---

1.  I.R.E. 803 provides in part:
    The following are not excluded by the hearsay rule, even though the declarant is available as a witness.
    . . . .

(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.

discretion of the trial court. *State v. Bingham,* 116 Idaho 415, 421, 776 P.2d 424, 430 (1989); *State v. Peite,* 122 Idaho 809, 816, 839 P.2d 1223, 1230 (Ct.App.1992). The trial court must make two determinations in reaching its conclusion. "First, there must be an occurrence or event sufficiently startling to render inoperative the normal reflective thought processes of an observer. Second, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought." *State v. Parker,* 112 Idaho 1, 4, 730 P.2d 921, 924 (1987) *quoting* E. Cleary, McCORMICK ON EVIDENCE, § 297 (3d. ed 1984); *State v. Burton,* 115 Idaho 1154, 1156, 772 P.2d 1248, 1250 (Ct. App.1989).

In *Bingham* and *Parker,* our Supreme Court discussed the excited utterance exception as it applies to cases involving sexual assault. The *Parker* decision recognized that in sex crime cases the excited utterance exception is given broader application than in other cases.

> [T]here has developed an expansion of the excited utterance exception under which many jurisdictions admit not only the fact of the complaint but also its details.... The tendency to admit such statements, even when made hours after the event, probably lies in their high probative value. Given that sexual assault crimes violate one's most intimate physical and mental feelings, the victim can reasonably be expected not to discuss the crime until meeting with a family member, close friend, law enforcement agent, or other trusted individual.

*Parker,* 112 Idaho at 4, 730 P.2d at 924 (citations omitted). The Court also observed that: "A sexual assault is one of the most distressing experiences a person could have. The distress is likely to remain bottled up in the victim until she or he can talk about what happened." *Id.* The Court then affirmed the admission of the victim's statements made about three hours after the offense. The Court noted that when the statements were made, the victim was crying, looking very tired and "like a lot had happened to her." *Parker,* 112 Idaho at 4, 730 P.2d at 924.

In *Bingham,* the Court upheld admission of a child victim's statements to a police officer and to the victim's mother made while at a hospital shortly after a sexual assault. The Court held the statements were excited utterances because there was a sufficient foundation showing that the child was upset and that the statements were made a short time after the stressful event.

In the instant case, as in *Bingham* and *Parker,* the evidence supports the trial court's determination that the victim's out-of-court statement was admissible as an excited utterance. J.S.'s description of the abuse was given to Cram within a few hours of the alleged molestation when the child was still likely to be emotionally distressed by the troubling event. Before Cram arrived, Stover's girlfriend who was caring for the children noticed that J.S. appeared to be upset, but J.S. would not tell her what was troubling him. J.S.'s demeanor when he confided in Cram suggests that he was still subject to the emotional impact of the molestation. According to Cram, J.S. mumbled and was reluctant to talk about the event. He "clammed up" on several occasions. Cram's testimony indicates that he did not question the child in a leading way, but let J.S. speak freely, only encouraging him to speak openly when he seemed hesitant. Therefore, there was a sufficient evidentiary foundation upon which the court could reasonably determine that J.S.'s statements to Cram were spontaneous reactions to a distressing event and were not the product of fabrication.

Stover asserts, however, that the statements to Cram cannot be excited utterances because J.S. had already told his eight-year-old brother about Stover's actions. He contends the statements had not remained "bottled up" and consequently could not be excited utterances. We disagree. The appropriate inquiry is whether the statement was a spontaneous reaction to the occurrence or event and not the result of reflective thought. *Burton,* 115 Idaho at 1156, 772 P.2d at 1250. In making this discretionary determination, the trial court reviews the totality of circumstances, focusing upon the

nature of the startling event and the demeanor of the declarant when making the statement. A bright line rule, as urged by Stover, that only the declarant's *first* utterance after the event meets the criteria for an excited utterance, would be an inappropriate limitation on this hearsay exception. Here there is substantial evidence that J.S. was still under the emotional effect of the event and that his statements to Cram were not the product of reflective thought. Therefore, we find no abuse of discretion in the trial court's decision allowing testimony about the child's revelation to Cram.

## IV

## VIDEOTAPED INTERVIEW OF VICTIM REGARDING THE ALLEGED MOLESTATION BY STOVER

■ A few days after J.S. reported the abuse to Cram, J.S. was interviewed at the CARES ("Children at Risk Evaluation Services") unit of the St. Luke's Regional Medical Center, and the interview was videotaped. The videotape was admitted into evidence and shown to the jury during the State's case-in-chief. On appeal, Stover contends that this tape was hearsay and that its admission violated his right to confront adverse witnesses guaranteed by the Sixth Amendment to the United States Constitution. It is unnecessary for us to decide these evidentiary and constitutional issues, however, because Stover did not preserve them for appeal.

In the proceedings below Stover did not object to introduction of the CARES videotape on grounds that it was hearsay or in violation of his confrontation clause rights. Indeed, he never urged that the videotape be excluded. At one point in the trial, Stover's attorney asserted that J.S. should not be allowed to testify in person because he was too young to be a competent witness, and the attorney urged that *only* the videotape

should be admitted as evidence of the child's allegations.[2] At another point he argued that the videotape should be admitted, but only for the limited purpose of impeaching J.S. with his prior inconsistent statement shown on the tape, and he requested that the jury be given such a limiting instruction. At no point did defense counsel assert that the videotape should be excluded entirely.

■ Rule 103(a)(1), I.R.E., directs that error may not be predicated upon the admission of evidence without a timely objection or motion to strike stating the specific ground of objection. Because the requisite objection or motion to strike was not made here, we will not consider on appeal Stover's claim of error in admission of the videotape.[3] I.A.R. 35(a)(6); *East v. West One Bank*, 120 Idaho 226, 231, 815 P.2d 35, 40 (Ct.App.1991), *cert. denied*, 504 U.S. 976, 112 S.Ct. 2948, 119 L.Ed.2d 571 (1992); *State v. Burris*, 101 Idaho 683, 684 n. 1, 619 P.2d 1136, 1137 n. 1 (1980).

## V

## VIDEOTAPE OF PREVIOUS INTERVIEW REGARDING UNRELATED ABUSE

■ Stover next argues that he was denied the right to present an effective defense by the court's suppression of a videotape of an earlier interview of J.S. about a previous, unrelated suspicion of sexual molestation by someone other than the defendant. According to both parties, during that interview J.S. denied that he had ever been touched sexually.

After viewing the videotape, the district court found its contents irrelevant and granted the State's motion to exclude it. The court also held, however, that Stover could present evidence through testimony of J.S.'s mother to show that she previously had suspected sexual abuse similar to that now

---

**2.** Later in the trial the court ruled that J.S. was competent to testify. Stover does not challenge this finding on appeal.

**3.** In a footnote in his appellate brief, Stover asserts that if this Court finds that his trial counsel failed to preserve an objection to the video-

tape, such a failure would constitute ineffective assistance of counsel. Such a reference in a footnote without authority or argument will not suffice to present on appeal an issue of ineffective assistance of counsel and we will not consider it.

charged and that J.S. had been interviewed about the allegation by CARES personnel.

■ Stover contends the exclusion of the videotape was error. However, he has not provided this Court a copy of the videotape for review on appeal. Without the videotape we cannot determine whether the district court erred in holding that the tape contained no relevant evidence. It is axiomatic that an appellant bears the burden of furnishing a record on appeal to substantiate a claim of error. *State v. Murinko,* 108 Idaho 872, 873, 702 P.2d 910, 911 (Ct.App.1985); *State v. Sima,* 98 Idaho 643, 570 P.2d 1333 (1977). In the absence of a record adequate for appellate review, the decision of the trial court on this point is affirmed.

## VI

### SENTENCE REVIEW

■ Finally, Stover asserts that his unified life sentence with a ten-year minimum period of confinement is excessive. He argues that because treatment for his deviant behavior is not available at the Idaho State Correctional Institution, society will be no less in danger following his release. Thus he contends the primary goal of sentencing—the protection of society—would be better served if he were given a shorter fixed term so that he could be sooner placed in treatment as a condition of parole.

■ Where a sentence is not illegal, we review it to determine if there has been an abuse of discretion, focusing upon the nature of the offense and the character of the offender. *State v. Reinke,* 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982); *State v. Wolfe,* 99 Idaho 382, 384, 582 P.2d 728, 730 (1978). The defendant bears the burden of showing that the sentence is unreasonably harsh in light of the primary objective of protecting society and the related goals of deterrence, rehabilitation and retribution. *State v. Brown,* 121 Idaho 385, 825 P.2d 482 (1992); *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). For purposes of appellate review, we consider the minimum period of confinement as the probable duration of incarceration. *State v. Broadhead,* 120 Idaho 141, 146, 814 P.2d 401,

406 (1991), *overruled on other grounds, State v. Brown, supra;* *State v. Sanchez,* 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989). Therefore Stover would be entitled to relief only if he can show that his minimum term of ten years is unreasonable in light of the nature of his crime and Stover's character.

We observe first that Stover's crime is a most serious one. Psychological damage to the victims of sexual molestation may be long-lasting and irreversible. Our legislature's authorization of life imprisonment as a maximum sentence for lewd conduct with a minor under the age of sixteen reflects a societal conviction that such conduct warrants severe punishment.

Stover was only twenty-two years old at the time of sentencing. He had previously been convicted of a similar offense against his younger sister and had served three years in prison for that offense. The current charge arose less than a year after his release from prison. Stover had chosen not to participate in the sexual offender evaluation and counseling programs offered while he was incarcerated at the North Idaho Correctional Institution on the prior conviction. That choice to eschew available treatment belies Stover's current argument that society would be better served by treating him than by incarcerating him.

The district court properly noted that this repeat offense shows that Stover was not deterred by the prior imprisonment and that he presents a risk of further offenses against children. Under these circumstances, the court's conclusion that the protection of society required a ten-year minimum term was not unreasonable. We find no abuse of discretion in the sentence imposed.

The judgment of conviction and sentence are affirmed.

WALTERS, C.J., and PERRY, J., concur.